Filed 10/23/13  McCoy v. Raheel CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PENNY MCCOY et al., | B240553 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC461679) |
| v. | |
| SYED RAHEEL et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Mark V. Mooney, Judge.  Affirmed.

Rosen & Associates, Robert C. Rosen, John B. Wallace, and David Paul Bleistein for Plaintiffs and Appellants.

Foley & Lardner, Tami S. Smason and Sonia Salinas for Defendants and Respondents.

Plaintiffs and appellants Penny McCoy (McCoy) and Chandrashekhar Joshi (Joshi) (collectively "plaintiffs") appeal from the trial court's orders granting special motions to strike, pursuant Code of Civil Procedure section 425.16,[1] all of the causes of action asserted against defendants and respondents Syed Raheel (Raheel) and Lifeforce Cryobank Sciences, Inc. (Lifeforce) (collectively "defendants") in this shareholder derivative action brought by plaintiffs on behalf of Cryobanks International, Inc. (Cryobanks). Plaintiffs also appeal from orders awarding defendants their respective attorney fees and costs. We affirm the trial court's orders.

## BACKGROUND

### Parties

Plaintiffs were shareholders of Cryobanks, a private, for-profit corporation that had approximately 150 shareholders. Raheel was a secured creditor of Cryobanks who foreclosed on Cryobanks's assets after Cryobanks defaulted on one or more loans. Lifeforce acquired all of Cryobanks's assets following Raheel's foreclosure action.

### Florida action and judgment

Raheel sued Cryobanks in a Florida foreclosure action (the Florida action) after Cryobanks defaulted on one or more loans. Plaintiffs were initially named and served as defendants in the Florida action, and Joshi appeared in that action by filing two motions to dismiss the action against him.[2] A default judgment in the Florida action was issued against Cryobanks and in favor of Raheel on May 5, 2010. Pursuant to that judgment, Cryobanks's assets were sold to Lifeforce for $100 at a public auction held on June 8, 2010.

### Entry and enforcement of sister state judgment

On June 29, 2010, Raheel sought to have the Florida judgment against Cryobanks entered in California by filing an application for entry of sister state judgment. On July

---

[1]    All further statutory references are to the Code of Civil Procedure, unless otherwise stated. A special motion to strike is also referred as an anti-SLAPP motion.

[2]    Raheel subsequently dismissed both Joshi and McCoy from the Florida action.

2

16, 2010, Raheel's application was approved, and a judgment based on sister state judgment was entered in the Los Angeles County Superior Court. Raheel served Cryobanks with notice of the entry of the sister state judgment.

In an effort to enforce the sister state judgment, Raheel filed, on August 23, 2010, a notice of lien in an action pending in federal district court between plaintiffs and several other defendants (the federal action). The federal action was a shareholder derivative lawsuit brought by plaintiffs on behalf of Cryobanks. Raheel filed the notice of lien in the federal action under the theory that any recovery by the plaintiffs in that action would be on behalf of Cryobanks, the judgment debtor on the sister state judgment, and that Raheel would be entitled to any recovery owed to Cryobanks. Raheel served plaintiffs with notice of the lien by mail on August 26, 2010. The federal action ended in a mistrial on September 16, 2010, and Cryobanks recovered nothing in that action.

On November 22, 2010, plaintiffs filed a cross-complaint in the sister state judgment action. Their cross-complaint was stricken pursuant to section 435.

**The instant action and Raheel's anti-SLAPP motion**

Plaintiffs filed the instant shareholder derivative action on May 19, 2011. Their complaint alleges the following causes of action against Raheel and Lifeforce: (1) tortious breach of the implied covenant of good faith and fair dealing, (2) negligence, (3) unjust enrichment, (4) fraud, (5) declaratory relief, (6) usurping Cryobanks's opportunities, (7) misappropriation of trade secrets, (8) fraudulent inducement, (9) suppression and concealment, (10) false promise, (11) fraudulent inducement, (12) constructive fraud, (13) negligent misrepresentation, (14) gross negligence. Plaintiffs sought damages, including punitive damages, restitution, disgorgement of profits, cancellation of any Cryobanks stock issued to defendants, and appointment of a receiver to maintain and protect Cryobanks's assets.

On October 12, 2011, Raheel filed an anti-SLAPP motion in which he argued that all of the causes of action asserted against him arose out of his prosecution of the Florida action against Cryobanks for money owed to him. On December 7, 2011, plaintiffs filed a first amended complaint in which the factual allegations against Raheel remained the

3

same.  On December 20, 2011, Raheel filed an amended notice for the anti-SLAPP motion informing the trial court that there was no substantive difference between the complaint and the first amended complaint.  Plaintiffs then filed their opposition to the anti-SLAPP motion, and Raheel filed his reply to the opposition.

The trial court granted Raheel's anti-SLAPP motion as well as a subsequent motion by Raheel for his attorney fees and costs, awarding him a total of $18,255.95.

**Lifeforce's anti-SLAPP motion**

On February 6, 2012, Lifeforce filed a demurrer to the first amended complaint and an anti-SLAPP motion, which plaintiffs opposed.  The anti-SLAPP motion was heard and granted on April 9, 2012.  The trial court granted Lifeforce's subsequent motion for attorney fees and costs and awarded Lifeforce a total of $13,896.12.

**The instant appeal**

Plaintiffs appeal from four trial court orders:  (1) a January 13, 2012 order granting Raheel's anti-SLAPP motion; (2) an April 9, 2012 order granting Lifeforce's anti-SLAPP motion; (3) an April 12, 2012 order awarding attorney fees and costs to Raheel; and (4) a September 5, 2012 order awarding attorney fees and costs to Lifeforce.

**DISCUSSION**

**I.  The statutory framework**

*A.  Section 425.16*

Section 425.16 was enacted in 1992 "to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  [Citation.]"  (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 (*Club Members*).)  As relevant here, subdivision (b)(1) of section 425.16 provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

4

Determining whether section 425.16 bars a given cause of action requires a two-step analysis. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); *Navellier, supra*, at p. 88.) "'A cause of action "arising from" [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) The scope of the statute is broad. In authorizing the filing of a special motion to strike, the Legislature "expressly provided that section 425.16 should 'be construed broadly.'" (*Club Members, supra*, 45 Cal.4th at p. 315.)

If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); *Navellier, supra*, 29 Cal.4th at p. 88.) In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741, fn. omitted.)

A trial court's order granting a special motion to strike under section 425.16 is reviewed de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

### B. Section 425.17

Section 425.17, subdivision (b) exempts certain public interest lawsuits from the ambit of the anti-SLAPP statute. It provides: "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or

different relief for purposes of this subdivision. [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b).)

The Legislature enacted section 425.17 in 2003 to curb the "disturbing abuse" of section 425.16. (*Club Members, supra*, 45 Cal.4th at p. 316.) "'According to the sponsor of Code of Civil Procedure section 425.17, Senator Sheila Kuehl, the same types of businesses who used the SLAPP action were inappropriately using the anti-SLAPP motion against their public-interest adversaries. Hence, the Legislature expressly designed subdivision (b) of section 425.17 to prevent the use of the anti-SLAPP device against "specified *public interest actions*," among others. (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended June 27, 2003, p. 2.)' [Citation.]" (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 499 (*Strathmann*).)

Not all public interest or class actions, however, are intended to be exempt from the anti-SLAPP law. (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 913 (*Blanchard*).) To be exempt, the action must be brought solely in the public interest or on behalf of the general public. (*Club Members, supra*, 45 Cal.4th at p. 317, fn. 6.) "The 'public interest' referred to in section 415.17(b), does not simply describe topics that members of the public might find interesting. Instead, the term 'public interest' is used to define suits brought for the public's good or on behalf of the public. To qualify under section 425.17(b)'s exemption, suits must be brought *solely* to secure this public benefit." (*Club Members*, at p. 318.) "The term 'solely' as used in section 425.17(b) 'expressly conveys the Legislative intent that section 425.17(b) not apply to an action that seeks a more narrow advantage for a particular plaintiff.' [Citation.]" (*Strathmann, supra*, 210 Cal.App.4th at p. 499.) An action is not subject to a motion to strike if it is brought

6

solely in the public interest and all of the conditions set forth in section 425.17 are met. (*Club Members, supra*, 45 Cal.4th at p. 316.)

Whether plaintiffs' action comes within the public interest exception of section 425.17, subdivision (b) is a threshold issue that we address prior to examining the applicability of section 425.16. (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 840.)

## II. Plaintiffs' action is not exempt under section 425.17

Plaintiffs' shareholder derivative action does not come within the public interest exemption accorded by section 425.17. A shareholder derivative action, by definition, is brought by shareholders for the benefit of the corporation. (*Villari v. Mozilo* (2012) 208 Cal.App.4th 1470, 1478 ["A derivative action and any recovery in such an action belong to the corporation"].) Cryobanks, and not the general public, is the only party that would benefit from any recovery resulting from the successful prosecution of plaintiffs' action. Plaintiffs' shareholder derivative action, brought for the benefit of a private corporate entity, does not meet the statutory requirement that an action be brought *solely* in the public interest or on behalf of the general public. (*Club Members, supra*, 45 Cal.4th at p. 318.)

Plaintiffs argue that section 425.17 is similar in language and purpose to section 1021.5, the private attorney general statute that awards attorney fees to a party whose action has resulted in the enforcement of an important right affecting the public interest. Plaintiffs maintain that actions in the "public interest" should include private civil actions that achieve a common benefit on behalf of a group of persons, such as the instant derivative action, that could achieve a substantial benefit for all of Cryobanks's shareholders. Plaintiffs' argument has been expressly rejected by the California Supreme Court. In *Club Members, supra*, 45 Cal.4th at pages 318-319, the Supreme Court underscored the differences between section 425.17 and section 1021.5 and explained why the two statutory schemes are not analogous:

> "While section 425.17 is similar to section 1021.5 in certain respects, the two statutes are also different in significant ways. First,

7

unlike the private attorney general statute, the text of section 425.17(b) requires that an action be brought 'solely in the public interest,' and cannot seek 'any' relief greater than or different from the relief sought for the general public. [Citation.] Section 1021.5 does not contain these limitations. [¶] The two statutes also involve different functions. Section 1021.5 is an attorney fees statute. It authorizes a trial court at the *end* of litigation to determine whether attorney fees should be awarded to the prevailing party. Section 425.17(b) comes into play at the *outset* of litigation and pertains to a special motion to strike. The viability of the underlying action itself is at issue in an anti-SLAPP motion and in the public interest exception to the anti-SLAPP statute. Attorney fees are separately available to a prevailing party in such instances under the anti-SLAPP statute. [Citation.] Because of these functional differences, section 425.17(b) cannot simply be intended to parallel the private attorney general statute."

Courts have also rejected the argument that section 425.17 applies to lawsuits that achieve a common benefit for a large group of persons. In *Blanchard, supra*, 123 Cal.App.4th 903, Division Three of this court concluded that section 425.17 did not apply to a class action lawsuit against DIRECTV, a satellite television provider, for sending demand letters to thousands of customers who had purchased electronic devices enabling them to obtain unauthorized access to DIRECTV's programming. (*Id.* at p. 909) The court in *Blanchard* concluded: "[P]laintiffs want to enjoin DIRECTV from sending this particular demand letter concerning this specific electronic device to users of this device. They are not seeking to assert some general right not to receive demand letters or notices. Nor do they seek a declaration about demand letters in general. Notwithstanding the number of the recipients of the letters rank in the thousands, there is no public interest principle being vindicated by this action. [Citation.]" (*Id.* at pp. 914-915.) Here, as in *Blanchard*, plaintiffs' derivative action does not benefit corporations or corporate shareholders generally, but only Cryobanks and its former shareholders. The action accordingly does not come within the statutory exemption accorded by section 425.17, subdivision (b).

8

### III.  The anti-SLAPP motions were properly granted

Having determined that plaintiffs' action does not come within the statutory exemption accorded by section 425.17, subdivision (b), we now address whether that action is within the ambit of section 425.16.

#### A.  *Arising from protected activity*

The causes of action asserted against Raheel and Lifeforce arise from Raheel's filing and prosecution of the Florida action or the enforcement of the Florida judgment and were therefore subject to a motion to strike under section 425.16.  Filing a lawsuit is an exercise of a party's constitutional right of petition.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 (*Chavez*).)  "'"[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action."'  [Citations.]" (*Briggs, supra*, at p. 1115.)  Thus, "a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike.  [Citation.]" (*Chavez, supra*, at p. 1087.)  An action to enforce a judgment is also a protected activity under section 425.16.  (*Rusheen, supra*, 37 Cal.4th at pp. 1063-1065.)

Each of the causes of action asserted against Raheel and Lifeforce include the allegations that Raheel "committed extrinsic fraud in Raheel's Two Lawsuits in order to acquire CRYO's assets," that "RAHEEL agreed to foreclose on CRYO's assets" pursuant to a secret agreement with Zubair Kazi (another defendant in this action but who is not a party to this appeal), that the Florida action "was filed to foreclose on all of CRYO's assets as a result of CRYO's non-payment of a loan from Raheel," that Raheel filed an application "for entry of a sister state judgment based on the Judgment in the Foreclosure Case," and that "as a result of Raheel's Foreclosure Case, a foreclosure sale was held in Florida" and "CRYO's assets were acquired for $100.00 by LIFEFORCE."  All of these alleged misdeeds arise out of the filing and prosecution of the Florida action or enforcement of the judgment obtained in that action -- conduct that is protected under section 425.16.  (§ 425.16, subd. (b)(1); *Rusheen, supra*, 37 Cal.App.4th at p. 1065.)

9

Defendants accordingly met the threshold requirement of establishing that the causes of action asserted against them arise from activity protected under section 425.16.

### B. *Probability of prevailing*

Because defendants' actions to obtain and enforce a judgment were protected activities under the anti-SLAPP statute, we must now determine whether plaintiffs met their burden of demonstrating a probability of prevailing on their causes of action. To do so, plaintiffs were required to present evidence showing they could establish a prima facie case at trial. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1496.) They failed to do so.

Defendants argued that plaintiffs' claims are barred under the doctrine of res judicata. "'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) "Claim preclusion applies when '(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding.' [Citation.] Upon satisfaction of these conditions, claim preclusion bars 'not only . . . issues that were actually litigated but also issues that could have been litigated.' [Citation.]" (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 226.)

Plaintiffs' action is an attempt to relitigate claims that either had been or could have been litigated in the Florida action. Their complaint alleges that Raheel "claimed" to be a secured creditor of Cryobanks; that the Florida action was the result of a collusive secret agreement between Raheel and Zubair Kazi; and that Lifeforce acquired Cryobanks's assets at a substantial discount, to the detriment of Cryobanks and its shareholders. Plaintiffs were named as defendants in the Florida action and were served with a copy of the amended complaint in that action. Joshi appeared in the Florida action. Despite having actual knowledge of the Florida action and the relief sought -- the

10

foreclosure of Cryobanks's assets -- plaintiffs did not attempt to litigate the claims they now seek to assert, nor did they subsequently seek to vacate the Florida judgment based on their allegations of fraud and collusion. Cryobanks was a party to the Florida action. Plaintiffs, as shareholders of Cryobanks, are considered to be in privity with Cryobanks for purposes of applying the doctrine of res judicata. (See *Gagnon Co. v. Nevada Desert Inn, Inc.* (1955) 45 Cal.2d 448, 453.) The conditions for applying the doctrine of res judicata are met in this case.

Plaintiffs failed to demonstrate why their claims are not barred by res judicata. Their opposition to Raheel's anti-SLAPP motion was premised entirely on the argument that their lawsuit came within the exemption accorded by section 425.17. Their opposition to Lifeforce's anti-SLAPP motion relies on the allegations asserted in their complaint and "compelling inferences" therefrom. In this appeal, plaintiffs argue that their complaint is "full of allegations relating to the Secret Agreement" between Raheel and Kazi to acquire Cryobanks's assets out of foreclosure. The unsupported allegations in the complaint are insufficient to show that plaintiffs could establish a prima facie case at trial. "It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint. Substantiation requires something more than that. Once the court determines the first prong of the statute has been met, a plaintiff must provide the court with sufficient evidence to permit the court to determine whether 'there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568.) Plaintiffs accordingly failed to demonstrate a probability of prevailing on their claims.

### C. *Plaintiffs' discovery request was properly denied*

Plaintiffs contend the trial court should have permitted the taking of discovery before ruling on the anti-SLAPP motions. The filing of an anti-SLAPP motion stays all discovery proceedings in an action. (§ 425.16, subd. (g).) Notwithstanding the stay, a court may, upon the filing of a noticed motion and a showing of good cause, order that specified discovery may be conducted. (*Ibid.*) Plaintiffs did not file a noticed motion

requesting discovery, nor did they show that there was good cause for such discovery. The trial court's refusal to allow discovery was not an abuse of discretion. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248.)

## IV. Attorney fees motions

Plaintiffs' challenge to the orders awarding defendants their attorney fees after prevailing on their respective anti-SLAPP motions is based solely on the argument that the anti-SLAPP motions were improperly granted. Defendants are entitled to reasonable attorney fees and costs incurred in connection with their respective anti-SLAPP motions. (§ 425.16, subd. (c).) Plaintiffs have failed to establish any abuse of discretion by the trial court in awarding such fees and costs. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1130.)

## DISPOSTION

The orders granting the special motions to strike and the orders awarding defendants their respective costs and attorney fees are affirmed. Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST


12