[No. B227558. Second Dist., Div. Five. Nov. 10, 2011.]

CALIFORNIANS AWARE et al., Plaintiffs and Appellants, v.
JOINT LABOR/MANAGEMENT BENEFITS COMMITTEE et al.,
Defendants and Respondents.

## COUNSEL

Law Offices of Kelly A. Aviles, Kelly A. Aviles; Dennis A. Winston; and Joseph T. Francke for Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, Warren S. Kinsler and Joshua E. Morrison for Defendants and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiffs, petitioners, and appellants Californians Aware and Richard P. McKee (McKee) filed a verified petition for writ of mandate, an injunction, and declaratory relief against defendants, respondents, and respondents in this appeal, the Los Angeles Community College District (District) and the Joint Labor/Management Benefits Committee (JLMBC), alleging that the JLMBC failed to comply with the public notice and open meeting requirements of the Ralph M. Brown Act (Brown Act). (Gov. Code, § 54950 et seq.)[1] The trial court in denying the petition found that the JLMBC was not subject to the Brown Act because the JLMBC was formed to further the District's collective bargaining with the unions representing the District's employees and thus was exempt from the Brown Act under section 3549.1, subdivision (a), which is part of the Educational Employment Relations Act (EERA) (§ 3540 et seq.).[2] Petitioners appeal. We affirm.

## BACKGROUND[3]

In or about 2002, the District entered into a "Master Benefits Agreement" (Agreement) with unions representing its employees[4] concerning hospital-medical, dental, vision group coverage, group life insurance coverage, and the District's employee assistance program. The unions are referred to in the Agreement as the "Exclusive Representatives" of the employees. Pursuant to the Agreement, the District was to convene, and the Exclusive Representatives were to participate in, the JLMBC. The JLMBC's purpose was to "contain the costs of the District's Health Benefits Program while maintaining and, when feasible, improving the quality of the benefits available to employees."

---

[1] All statutory citations are to the Government Code unless otherwise noted.

[2] The EERA sometimes used to be referred to as the Rodda Act. (*Sonoma County Bd. of Education v. Public Employment Relations Bd.* (1980) 102 Cal.App.3d 689, 692 [163 Cal.Rptr. 464]; 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 587, p. 700.)

[3] The factual background is taken from the pleadings before the trial court.

[4] The Los Angeles College Faculty Guild, AFT Local 1521; the AFT College Staff Guild, Los Angeles, AFT Local 1512A; the Los Angeles City and County School Employees Union, SEIU (Service Employees International Union) Local 99; the Los Angeles/Orange Counties Building and Construction Trades Council; the Supervisory Employees Union, SEIU Local 347; and the Public, Professional, and Medical Employees Union of the California Teamsters, Local 911.

Prior to adoption of the Agreement, the District's six bargaining units each had a separate article in their collective bargaining agreements that addressed health benefits. Those articles were inconsistent, resulting in coverage disparities. One of the Agreement's purposes was to ensure common benefits throughout the District. Under the Agreement, the District's health benefits program consisted of "group benefit plans recommended by the Joint Labor/Management Benefits Committee and approved by the Board under which eligible District employees (and their eligible dependents) receive hospital, medical, dental, and vision care coverage. The purpose of the Health Benefits Program is to provide quality health care to the District's employees, retirees, and their eligible dependents and survivors."

The JLMBC was composed of "one voting and one non-voting District Member" (District Members); six "Employee Members," one from each of the Exclusive Representatives; and the "Chair" who was to be nominated by the president of the Los Angeles College Faculty Guild and confirmed by a simple majority of the regular voting members. Each Exclusive Representative could appoint nonvoting members in proportion to the size of each bargaining unit. The JLMBC had authority to:

"1. review the District's Health Benefits Program and effect any changes to the program it deems necessary to contain costs while maintaining the quality of the benefits available to employees (this includes, but is not limited to, the authority to substitute other plans for the District's existing health benefits plans);

"2. recommend the selection, replacement, and evaluation of benefits consultants;

"3. recommend the selection, replacement, and evaluation of benefit plan providers;

"4. review and make recommendations regarding communications to faculty and staff regarding the health benefits program and their use of health care services under it;

"5. review and make recommendations regarding benefit booklets, descriptive literature, and enrollment forms;

"6. study recurring enrollee concerns and complaints and make recommendations for their resolution;

"7. participate in an annual review of the District's administration of the Health Benefits Program;

"8. review and make recommendations about the District's health benefits budget; and

"9. if health care legislation that necessitates modification of the District's Health Benefits Program is enacted before the termination of this agreement, assess the effects of such legislation and make recommendations to the District and the Exclusive Representatives about appropriate action to take."

Any action taken by the JLMBC required approval by the affirmative vote of the voting District Member and all but one of the voting Employee Members at a meeting at which a quorum was present. The Agreement provided that a quorum consisted of the voting District Member and any five voting Employee Members. The JLMBC had to submit any proposed changes to the board of trustees (presumably the District's board of trustees) (Board) for its consideration. In order to continue to provide quality health care to the District's employees, retirees, and eligible dependents at a reasonable and sustainable cost, the JLMBC annually had to report to the Board on its actions and activities to mitigate increases to the cost of the health benefits program.

In 2002, the District adopted board rule 101702.10, which provided, "The District shall convene a Joint Labor/Management Benefits Committee (JLMBC) as prescribed by the Master Agreement between the District and the exclusive representatives of its employees. The role, composition, and authority of the Committee are specified in Section IV of the Master Agreement. Section IV of that Agreement (as it now reads or as it may be revised by the parties from time to time) is, by this reference, incorporated herein as if set forth in full."

McKee, on behalf of himself and Californians Aware, submitted a letter to the Board and the JLMBC asserting that the JLMBC was a "legislative body" of the District, which had been holding meetings that did not conform to the public notice and open meeting requirements of the Brown Act. McKee demanded that the District publicly acknowledge in a letter to him that the JLMBC was a "legislative body" under the Brown Act and that all future JLMBC meetings would comply with the Brown Act. Dr. Susan Aminoff, the Chair of the JLMBC, responded that the JLMBC was not a "Brown Act committee."

Petitioners filed their verified petition for writ of mandate, an injunction, and declaratory relief for the JLMBC's alleged violations of the Brown Act. In their petition, petitioners alleged, among other things, that a controversy existed between petitioners and the JLMBC concerning "(1) the legal rights of members of the public to proper and timely notice of the business to be

transacted by the JLMBC and to an opportunity to provide input to the JLMBC prior to or during the JLMBC's discussion of that business; and (2) the ministerial duties imposed upon the JLMBC by the Brown Act." The petition sought a declaration that the JLMBC is a "legislative body" under the Brown Act and a peremptory writ of mandate ordering the JLMBC to comply with the Brown Act's requirements. Petitioners filed a motion for "Peremptory Writ of Mandate and for Declaratory Relief."

The trial court denied petitioners' petition for writ of mandate. In its order denying the petition, the trial court referred to the California Attorney General's publicly issued opinion that the JLMBC is not required to comply with the Brown Act. The trial court stated that the petition implicated two statutory schemes—the Brown Act and the EERA. According to the trial court, the purpose of the Brown Act, an open meeting law, is to require local entities to conduct their business in public, and the purpose of the EERA is to require public school districts, including community college districts, to recognize and bargain collectively with labor unions representing school district employees. The trial court noted that there is a "tension" between the open meeting requirements of the Brown Act and the closed-door collective bargaining provided by the EERA. The trial court opined that the Legislature resolved that tension with section 3549.1, subdivision (a), which provides that meetings and negotiations between management and labor are not subject to the Brown Act.

The trial court rejected petitioners' attempt to distinguish meetings conducted by the JLMBC from labor-management negotiations and observed that the District and its employees' unions had agreed to divide their negotiations into subgroups, one of which was the "particularly complex" subject of health benefits. The trial court said that the parties created the JLMBC, "to filter out the changes that are to be brought to the negotiating table by requiring some degree of consensus by both labor and management members of the JLMBC in order to submit a change to the board of trustees for its consideration." The trial court concluded, "The activities of the JLMBC are part of the collective bargaining process and the intent of the legislature is that those activities are not to be done in public."

## DISCUSSION

Petitioners contend that the trial court erred in denying their petition for writ of mandate. The trial court properly ruled that the JLMBC is not subject to the provisions of the Brown Act.

## A. Standard of Review

" ' "In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]" [Citation.]' (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].)" (*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 301 [121 Cal.Rptr.3d 172]; see *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293 [81 Cal.Rptr.2d 456] (*International Longshoremen's*) [applicability of Brown Act to undisputed facts is subject to de novo review].) Here, because the facts are undisputed, we make our own determination as to the interpretation and application of the Brown Act and the EERA.

## B. Relevant Statutes

### 1. The Brown Act

■ Section 54953, subdivision (a) sets forth the Brown Act's general requirement that local agencies must hold their meetings open to the public. Section 54953, subdivision (a) provides, "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."[5] As relevant here, section 54952, subdivision (b) of the Brown Act defines a "legislative body" as "[a] commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body." A commission, committee, board, or other body of a local agency is "created by" charter, ordinance, resolution or other formal action of a legislative body if the legislative body " 'played a role in bringing' . . . 'into existence' " the commission, committee, board, or other body. (*Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 864 [104 Cal.Rptr.2d 857] (*Epstein*), quoting *International Longshoremen's, supra*, 69 Cal.App.4th at p. 295; see also *McKee v. Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force* (2005) 134 Cal.App.4th 354, 358–363 [36 Cal.Rptr.3d 47].)

---

[5] Section 54954.2 provides for notice.

### 2. *The EERA*

Section 3549.1 of the EERA provides in relevant part, "All the proceedings set forth in subdivisions (a) to (d), inclusive, are exempt from the provisions of . . . the Ralph M. Brown Act (Chapter 9 (commencing with Section 54950) of Part 1 of Division 2 of Title 5), unless the parties mutually agree otherwise: [¶] (a) Any meeting and negotiating discussion between a public school employer and a recognized or certified employee organization."

Section 3540.1, subdivision (h) provides in pertinent part, " 'Meeting and negotiating' means meeting, conferring, negotiating, and discussing by the exclusive representative and the public school employer in a good faith effort to reach agreement on matters within the scope of representation . . . ." Section 3540.1, subdivision (k) provides as applicable here, " 'Public school employer' or 'employer' means the governing board of a school district, a school district . . . ."

### C. *Application of Statutes*

Petitioners contend that the JLMBC is a "legislative body" subject to the public notice and open meeting requirements of the Brown Act because the District played a role in bringing it "into existence" by entering into the Agreement and by adopting board rule 101702.10. The Brown Act exemption in section 3549.1 of the EERA does not apply to the JLMBC, petitioners contend, because the JLMBC is not a "public school employer" that may engage in "meeting and negotiating," as it is neither the District itself nor a governing board of the District.

The Attorney General issued a formal opinion that the JLMBC is not required to comply with the Brown Act. (92 Ops.Cal.Atty.Gen. 102, 107 (2009).) Citing section 3549.1 and its prior opinion at 61 Ops.Cal.Atty.Gen. 1, 8, 9 (1978) ("that the Legislature . . . did not intend to require bargaining committees to negotiate in public is clearly exemplified in section 3549.1 . . ."), the Attorney General stated that it is well settled that labor-management negotiations conducted pursuant to the EERA between a public school employer and a recognized or certified employee organization are not subject to the Brown Act. (92 Ops.Cal.Atty.Gen., *supra*, at p. 105.) The Attorney General added, "Health benefits are matters of employee health, safety, and training, which fall squarely within the recognized scope of collective bargaining. [Fn. omitted.] The JLMBC formation springs directly from collective bargaining between an employer and the exclusive bargaining representatives of the employer's workforce. With its ongoing responsibility to monitor the employees' health benefits, the JLMBC plays a continuing role in the collective bargaining process with respect to a mandatory subject of bargaining." (*Id.* at p. 106.)

The Attorney General further stated, "To 'create' means, among other things, 'to bring into existence,' or 'to produce or bring about by a course of action or behavior.' [Fn. omitted.] The JLMBC was brought into existence through the process of collective bargaining memorialized in the Master Agreement. Having established the JLMBC, the Master Agreement conferred upon the District the complementary obligation to cause the JLMBC to assemble, which the District discharged through the adoption of Rule 101702.10. [¶] Because the JLMBC was created through the process of collective bargaining as memorialized in the Master Agreement, it does not come within the definition of a legislative body under section 54952. [Fn. omitted.]" (92 Ops.Cal.Atty.Gen., *supra*, at pp. 106–107.)

We agree with the Attorney General and respondents that the JLMBC was created as part of, and for the purpose of furthering, the collective bargaining process under the EERA and, as such, is not subject to the provisions of the Brown Act. (92 Ops.Cal.Atty.Gen., *supra*, at pp. 105–107.) In this matter, we view the Attorney General's opinion as a significant authority. As the court in *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829 [25 Cal.Rptr.2d 148, 863 P.2d 218] said, "While the Attorney General's views do not bind us (*Unger* v. *Superior Court* (1980) 102 Cal.App.3d 681, 688 [162 Cal.Rptr. 611]), they are entitled to considerable weight (*Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, 431 [15 Cal.Rptr. 717]). This is especially true here since the Attorney General regularly advises many local agencies about the meaning of the Brown Act and publishes a manual designed to assist local governmental agencies in complying with the Act's open meeting requirements. (See, e.g., Open Meeting Laws (Cal.Atty.Gen., 1989).)" (See also *Shapiro* v. *Board of Directors* (2005) 134 Cal.App.4th 170, 183, fn. 17 [35 Cal.Rptr.3d 826] [quoting *Freedom Newspapers, Inc. v. Orange County Employees Retirement System, supra*, 6 Cal.4th at p. 829 and stating, " '[a]n opinion of the Attorney General "is not a mere 'advisory' opinion, but a statement which, although not binding on the judiciary, must be 'regarded as having a quasi judicial character and [is] entitled to great respect,' and given great weight by the courts. [Citations.]" ' [Citation.]"].)

Petitioners' contention that the Brown Act exemption in section 3549.1 does not apply to the JLMBC because the JLMBC is not a "public school employer" that may engage in "meeting and negotiating" as it is neither the District itself nor a governing board of the District is incorrect. The JLMBC is a means for the District and its employees' exclusive representatives to meet and negotiate. Under the Agreement, the JLMBC includes one voting District Member and one nonvoting District Member. Section 3543.3 plainly permits the District, a "public school employer," such representation when "meeting and negotiating" with its employees' exclusive representatives. Section 3543.3 provides, "A public school employer *or such representatives*

*as it may designate* who may, but need not be, subject to either certification requirements or requirements for classified employees set forth in the Education Code, *shall meet and negotiate* with and only with representatives of employee organizations selected as exclusive representatives of appropriate units upon request with regard to matters within the scope of representation." (Italics added.) The District Members on the JLMBC clearly are such representatives—school districts act through agents or representatives.

Petitioners rely on *International Longshoremen's, supra,* 69 Cal.App.4th 287, *Epstein, supra,* 87 Cal.App.4th 862, and *Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781 [22 Cal.Rptr.2d 641] (*Frazer*) for the proposition that the JLMBC is a "legislative body" because the District participated in its creation. *International Longshoremen's, supra,* 69 Cal.App.4th at pages 290–291 concerned the Los Angeles City Council's approval of an agreement between its harbor department and 34 foreign and domestic companies to form a private, for-profit corporation that would design, construct, and operate a facility for the export of coal. *Epstein, supra,* 87 Cal.App.4th at page 864 dealt with the City of Los Angeles's formation of a nonprofit corporation to administer funds that the city raised through assessments on businesses in a special assessment district within the city— that is, to take over administrative functions that the city normally would handle. *Frazer, supra,* 18 Cal.App.4th at pages 785–786 and 792 involved the formation, pursuant to a school board policy, of hearing and review committees to advise the school superintendant and school district on a challenged change in school curriculum. None of these cases involved a mechanism, such as the one here, which was established as part of the collective bargaining process and therefore subject to a statutory Brown Act exemption.

Finally, petitioners contend that even if the JLMBC is deemed a "public school employer" within the meaning of section 3549.1, the JLMBC is subject to the open meeting and public participation requirements in section 3547.[6] Petitioners' argument fails. Section 3547 is part of the EERA and not the Brown Act. Petitioners' writ petition concerned the JLMBC's alleged lack of compliance with the Brown Act and not the JLMBC's alleged lack of

---

[6] Section 3547 provides:

"(a) All initial proposals of exclusive representatives and of public school employers, which relate to matters within the scope of representation, shall be presented at a public meeting of the public school employer and thereafter shall be public records.

"(b) Meeting and negotiating shall not take place on any proposal until a reasonable time has elapsed after the submission of the proposal to enable the public to become informed and the public has the opportunity to express itself regarding the proposal at a meeting of the public school employer.

"(c) After the public has had the opportunity to express itself, the public school employer shall, at a meeting which is open to the public, adopt its initial proposal.

"(d) New subjects of meeting and negotiating arising after the presentation of initial

compliance with section 3547 of the EERA. Accordingly, petitioners have forfeited this issue.[7] (*Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, 740 [128 Cal.Rptr.3d 551].)

## DISPOSITION

The judgment is affirmed. No costs are awarded.

Armstrong, Acting P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied November 28, 2011, and the opinion was modified to read as printed above.

---

proposals shall be made public within 24 hours. If a vote is taken on such subject by the public school employer, the vote thereon by each member voting shall also be made public within 24 hours.

"(e) The board may adopt regulations for the purpose of implementing this section, which are consistent with the intent of the section; namely that the public be informed of the issues that are being negotiated upon and have full opportunity to express their views on the issues to the public school employer, and to know of the positions of their elected representatives."

[7] Citing California Code of Regulations, title 8, section 32602, respondents argue that any claimed violation of section 3547 is within the exclusive jurisdiction of the Public Employment Relations Board and that therefore petitioners have not exhausted their administrative remedies. Because petitioners forfeited their claim that respondents violated section 3547, we do not reach this issue.