Filed 7/15/16; pub. & mod. order 8/8/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL CRUZ et al., | B265690 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC565079) |
| v. | |
| CITY OF CULVER CITY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael Johnson, Judge.  Affirmed.


Herbert L. Greenberg for Plaintiffs and Appellants.


Burke, Williams & Sorenson and Thomas B. Brown for Defendants and Respondents.


_____

Plaintiffs Paula Cruz and four of her neighbors appeal from the order dismissing as an anti-SLAPP action their complaint against the city council (the council) of Culver City and five of its council members for allegedly violating the state's open meeting laws. We reject plaintiffs' contentions that the action is exempt from the anti-SLAPP provisions because it concerned the public interest, and affirm because there is no probability plaintiffs will prevail on the merits.

**FACTS AND PROCEDURAL HISTORY**

Culver City residents Paula Cruz, Ronald Davis, John Heyl, James Province, and Nadine F. Province sued the City of Culver City (the city) for violating the state's open meeting law (Gov. Code, § 54950 et seq. (the Brown Act)), alleging that the council violated the Brown Act in two ways: (1) by discussing a change to parking restrictions in their neighborhood even though it was not on the agenda; and (2) by taking action on that issue when the council implicitly decided that the new challenge to those restrictions could proceed as an appeal of an earlier denial by city staff members.

The parking restrictions were imposed in 1982 when residents of Farragut Drive complained that parishioners of nearby Grace Lutheran Church (the church) jammed their street with parked cars during church services.[1] In 2004, the council adopted an ordinance for the establishment of preferential parking zones throughout the city and included the 1982 Farragut Drive Parking restrictions as one such zone.

In 2013, the council adopted regulations governing the establishment and regulation of preferential parking/residential parking permit zones. These regulations delegated to a "Traffic Committee" comprised of city staff members in the traffic engineering department the ability to administer and implement those regulations.[2]

---

[1]     Among those taking part in the 1982 parking dispute were current plaintiff and appellant Ronald Davis, and plaintiffs' counsel, Herbert L. Greenberg.

[2]     The scope of this ordinance is in dispute, an issue we discuss below.

In April 2014, a lawyer for the church sent a letter to city traffic analyst Gabriel Garcia seeking information about the application process for a change to the existing Farragut Drive Parking restrictions pursuant to the 2013 parking regulations. Garcia wrote back one month later that the city engineer was unable to act on such a request because the 2013 regulations did not provide a means by which non-residents could seek modification of the conditions imposed in a residential parking permit zone.

On August 1, 2014, the church sent a letter to council member Andrew Weissman complaining about Garcia's response and asking to address the council about the "onerous parking restrictions" on Farragut Drive.

At the council's August 11, 2014 meeting, Weissman mentioned the church's letter during the portion of the meeting set aside for the receipt and filing of correspondence from the public. Following a six-minute discussion with then-Mayor Meghan Sahli-Wells and Public Works Director and City Engineer Charles D. Herbertson, the church's request to review the Farragut Drive Parking restrictions was placed on the agenda for the next council meeting on September 8, 2014.[3]

In November 2014, plaintiffs filed a complaint seeking declaratory relief that the city and its five council members had violated the Brown Act by discussing the church's letter and by acting upon it by placing it on the agenda for the next meeting, even though the 2013 parking regulations did not provide for such action.[4]

The city brought an anti-SLAPP motion (Code Civ. Proc., § 425.16), seeking to dismiss plaintiffs' action because the city's alleged misconduct arose from First Amendment activity and because plaintiffs could not show a probability of prevailing on the merits. The city contended that it had done nothing more than have preliminary

---

[3]  It is the nature of that discussion and the decision to place the item on the next agenda that give rise to this action. In the discussion part of our opinion, we will set forth a transcript of the events.

[4]  In addition to Weissman, the complaint named council members Meghan Sahli-Wells (the mayor), Michael O'Leary, Jim B. Clarke, and Jeffrey Cooper. For ease of reference, we will refer to all the defendants collectively as the city.

discussions with staff members concerning the church's letter in order to have the matter placed on a future agenda, as expressly permitted by the Brown Act.

Plaintiffs contended their action was exempt from the anti-SLAPP provisions because it concerned a matter affecting the public interest. They also contended that the council's discussions and actions were so substantive that they fell outside the statutory exceptions. The trial court agreed with the city, granted the anti-SLAPP motion, and dismissed the complaint.

## DISCUSSION

1. *The Law Governing Anti-SLAPP Motions*

Code of Civil Procedure section 425.16 was enacted to address a sharp rise in the number of "[l]awsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)[5] The statute provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id*, subd. (b)(1).)

The trial court undertakes a two-step process when considering a defendant's anti-SLAPP motion. First, the trial court determines whether the defendant has shown the challenged cause of action arises from protected activity. The trial court reviews the pleadings, declarations, and other supporting documents to determine what conduct is actually being challenged, not whether that conduct is actionable. The defendant does not have to show the challenged conduct is protected as a matter of law; only a prima facie showing is required. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012)

---

[5] Such actions are commonly referred to as Strategic Lawsuits Against Public Participation, or SLAPP actions. All further undesignated section references are to the Code of Civil Procedure, unless otherwise noted.

4

211 Cal.App.4th 809, 822.)  If the defendant shows the challenged conduct was taken in furtherance of his First Amendment rights of free speech, petition, and to seek redress of grievances, the trial court must then determine whether the plaintiff has shown a probability of prevailing on the claim.  (*People ex rel. Fire Ins. Exchange,at p.*822)

We review the trial court's ruling on an anti-SLAPP motion independently, engaging in the same two-step process.  (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.)  We do not weigh credibility or the weight of the evidence.  Instead, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated plaintiff's evidence as a matter of law.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

The anti-SLAPP provisions do not apply to certain public interest lawsuits. Section 425.17, subdivision (b) provides:  "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:  [¶]  (1)  The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member.  A claim for attorney's fees, costs, or penalties does not constitute greater relief for purposes of this subdivision.  [¶]  (2)  The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.  [¶] (3)  Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to plaintiff's stake in the matter."

2.    *The Brown Act*

The Brown Act requires that most meetings of a local agency's legislative body be open to the public for attendance by all.  (Gov. Code, § 54953, subd. (a).)  Among its provisions, the Brown Act requires that an agenda be posted at least 72 hours before a regular meeting and forbids action on any items not on that agenda.  (§ 54954.2, subd. (a)(1).)  "The [Brown] Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies.  [Citation.]"  (*Epstein v. Hollywood Entertainment Dist. II*

5

*Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 868.) Either the district attorney or any interested person may bring an action for mandamus or injunctive or declaratory relief in order to stop or prevent violations of the Brown Act "or to determine the applicability of this chapter to actions or threatened future action of the legislative body . . . ." (Gov. Code, § 54960, subd. (a).)

There are three exceptions to the Brown Act's agenda requirement. Even if an item is not on the agenda, "members of a legislative body or its staff may briefly respond to statements made or questions posed by persons exercising their public testimony rights under [Government Code] Section 54954.3. In addition, on their own initiative or in response to questions posed by the public, a member of a legislative body or its staff may ask a question for clarification, make a brief announcement, or make a brief report on his or her own activities. Furthermore, a member of a legislative body, or the body itself, subject to rules or procedures of the legislative body, may provide a reference to staff or other resources for factual information, request staff to report back to the body at a subsequent meeting concerning any matter, or take action to direct staff to place a matter of business on a future agenda." (Gov. Code, § 54954.2, subd. (a)(2).)

3.  *The Council's Discussion Concerning the Church's Letter*

What follows is a transcript of the portion of the August 11, 2014 council meeting where the church's letter was discussed:[6]

"MAYOR MEGHAN SAHLI-WELLS:   May I have a motion to receive and file correspondence.

"Councilperson Mehaul O'Leary:   So moved.

"Councilperson Jim Clarke:   Second.

"MAYOR SAHLI-WELLS:  A motion and a second.

"Martin Cole:   And Madam Mayor as the City Council is voting on this motion that includes items that were received by the City Clerk's office up 'til 4 o'clock this

---

[6]   Although the record contains a video recording of the exchange, which we have viewed, it did not include a transcript. We asked the parties to provide a transcript and have augmented the appellate record to include that transcript.

6

afternoon and they are about evenly split between items A-1 and A-2.

"Secretary:    That motion passes 5 AYES.

"Councilperson Andrew Weissman:    Madam Mayor may I ask a question regarding one of the items that we just received and filed?

"MAYOR SAHLI-WELLS:  Yes.

"Weissman:    It's a letter from Ilbert Philips regarding the parking district in and around Farragut and Franklin.  And it was directed to me, I think it was directed to me because when we had the discussion a number of months ago regarding the consolidated districts I'm the one that raised the issue of an appeal from a decision or non-decision by the City Engineer, and I would like to ask for consensus to agendize the issue.  Apparently the staff's position is that the avenue of appeal only applies to residents since it's a residential parking district.  Perhaps I wasn't sufficiently clear the night we discussed the appeal, but I would like to, I'd like to discuss it again.  And get some clarification with regard to what the actual intent was.

"MAYOR SAHLI-WELLS:   So the agenda item that you're proposing is to discuss the appeal process?

"Weissman:    and the . . .

"MAYOR SAHLI-WELLS:   Or this specific case?

"Weissman:    Well we could do it I guess we could do it one of two ways and maybe staff, Mr. Herbertson may be here, can assist me.  I think we either agendize an item for discussion of the specific parking district or we can have a discussion of what it was that we intended to do when we provided for a right of appeal when we consolidated the parking districts?

"O'Leary:    And would you like to put on hold the appeal time? [indistinct] and timing . . . .

"Weissman:  I don't think, based on staff's position, there is no appeal time cuz there's no right to appeal.

"O'Leary:   Okay.

"MAYOR SAHLI-WELLS:  I'm comfortable discussing the issue.

"Clarke:   So am I.

"MAYOR SAHLI-WELLS:   Alright.

"Weissman: May I ask, just ask, Mr. Herbertson for some clarification as to what staff's preferred direction is on this?

"Charles Herbertson:   Staff's preference would be to just take up the issue of the parking, specifically regarding the parking on Farragut as opposed to whether or not business or non-resident should be able to appeal a parking district. The reason for that is it's a very rare circumstance -- first time I can remember that this has come up where there's been a desire to change the parking district once it's been formed, by an affected nearby business or in this [case] a church.  So just I would recommend that we just discuss this particular item as opposed to a more general the idea of an appeal, but that of course is up to the City Council.  If, if we are going to agendize that I would recommend that we notify both the Church, and as well as everybody in the district, so they would have the opportunity to come in and state their case.

"O'Leary:   And is there a time frame by which an appeal can umm, is that going to be an issue?

"Herbertson:   No, there's no time frame Councilman Weissman was saying the process, least as we've interpreted it at the Staff level, doesn't really allow for an appeal per se but they can always come to directly to the City Council at any time.  It's, it's your policy that you've adopted so at any point in each time a district is formed the city council effectively has the ability to hear any objections to that district at any time, so.

"MAYOR SAHLI-WELLS:   In regards to the timing, I believe that this is one of the oldest parking districts in Culver City if I'm not mistaken, so it's not based on a new decision or restriction it's based on existing conditions, is that correct?

"Weissman:   I think it's—I don't want to speak for the Church, but I think it's evolving conditions.  I think the, when the parking district was first established twenty-plus years ago, it was based on one set of circumstances, and I think those circumstances have evolved.  The neighborhood has changed, and I think what, what we would be doing

8

would be looking at the nature of and justification for continuing the district in its current iteration or deciding that we want to do something different.

"Herbertson:  Yes, you know I don't have the history right in front of me, but what Councilman Weissman said is correct.  My recollection is that the limits on the district have changed at least a couple of times  I think over the years so it is an old district but the restrictions have been changed over time and certainly, it's possible also that other things have also changed as well as for other uses in the area, etc.  So it would be appropriate to take a fresh look at it if that's the, the council's desire to do so.

"MAYOR SAHLI-WELLS:  Alright.

"Herbertson:  Okay.

"MAYOR SAHLI-WELLS:  Thank You."

4.    *The Public Interest Exception Does Not Apply*

Section 425.17 was enacted to curb the " 'disturbing abuse' " of the anti-SLAPP provisions.  (*Club Members For An Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315, quoting § 425.17, subd. (a).)  The public interest exception applies to only those actions brought solely in the public interest.  It does not apply to an action that seeks a more narrow advantage for a particular plaintiff.  (*Id.* at pp. 316-317.)  As a result, section 425.17, subdivision (b) does not apply to a party seeking any personal relief.  (*Club Members For An Honest Election*, pp. 309, 315.)

We look to the allegations of the complaint and the scope of relief sought in order to determine whether the public interest exception applies.  (*Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1460.)[7]

Plaintiffs contend they have satisfied all three requirements of the exception because:  (1) they have asked for nothing other than a declaration that the city's conduct violated the Brown Act, which would provide them no greater relief than the public at large would receive; (2) a judgment in their favor would provide a significant benefit to the public; and (3) private enforcement was necessary because no one else stepped up to

---

[7]    As a result, we hereby deny plaintiffs' request that we judicially notice the city's March 2016 resolution directing a study of the Farragut Drive Parking restrictions.

9

challenge the city's action, and plaintiffs will incur legal fees without a concomitant damages award should they prevail. The city contends that plaintiffs have an individual stake in the outcome that defeats application of the public interest exception.

Our examination of the complaint tips the balance in the city's favor. The complaint alleges that the city grandfathered in the Farragut Drive Parking restrictions in 2004, and then, pursuant to the 2013 parking regulations, delegated to the traffic engineer exclusive authority regarding changes to preferential parking zones. The traffic engineer later refused the church's requests to modify the Farragut Drive Parking restrictions, prompting the church's August 1, 2014 letter to Weisman.

Plaintiffs allege that contrary to the 2013 parking regulations, the council decided: (1) to remove the traffic engineer's exclusive jurisdiction over parking zone modification issues; (2) that it had original jurisdiction over the matter; and (3) that the Farragut Drive residents would have to re-petition the city to keep their restrictions in place. Plaintiffs also allege that the council did not inform the public "and in particular Farragut residents" that the city's traffic engineer believed the church had no per se right to appeal to the council, and instead decided that such a right was available. As part of this, plaintiffs allege, the council discussed substantive issues concerning the church's viewpoint on the need for changes to the parking zone.

Finally, plaintiffs alleged that they submitted a cease and desist letter to the city that "clearly describes the past action of the council on August 11, 2014" that the conduct violated the Brown Act, and that the city has not provided an unconditional commitment to "cease, desist from, and not repeat the past action that plaintiffs alleged in their aforesaid cease-and-desist letter."[8]

---

[8]     Plaintiffs provided a copy of the cease-and-desist letter in opposition to the city's anti-SLAPP motion. In it, plaintiffs complain that the council violated the 2013 parking regulations by providing the church with "non-existent appellate rights" and by ordering staff to take a fresh look at the Farragut Drive Parking restrictions. The letter asked the city to "cease and desist discussions and action related to its meeting on August 11, 2014."

Distilled, plaintiffs alleged that the council had no authority to hear an appeal by the church regarding the Farragut Drive Parking restrictions, and asked the city to stop taking further actions in that regard. Keeping the parking restriction at status quo would directly benefit plaintiff Farragut Drive homeowners. In short, plaintiffs sought personal relief in the form of a halt to any attempts by the church to undo the long-standing parking restrictions. As a result, the public interest exception to the anti-SLAPP provisions does not apply.

5.     *Plaintiffs Are Unlikely to Prevail on the Merits*

Plaintiffs do not dispute that the city has satisfied the first prong of an anti-SLAPP motion – that its statements concerning the parking restrictions and its direction to place the issue on a future agenda were forms of protected activity under the First Amendment. The issue we must decide is whether plaintiffs have carried their burden of showing it is probable they will prevail on the merits.

We begin with the three Brown Act exceptions to discussing or acting upon non agenda items:  (1) members of a legislative body, or their staff, may briefly respond to statements made or questions posed by persons exercising their right to publicly testify at a hearing; (2) either on their own initiative or in response to a question posed by the public, the legislative body or its staff may ask a question for clarification, make a brief announcement, or make a brief report on their own activities; and (3) subject to its rules or procedures, a legislative body may ask staff to provide factual information, report back at a later time, or place an item on a future agenda. (Gov. Code, § 54954.2, subd. (a)(2).)

Although plaintiffs characterize the council's comments and questions concerning the church's ability to challenge the Farragut Drive Parking restrictions as something substantive and substantial, we disagree. Based on our reading of the transcript and viewing of the video recording, Weisman did no more than ask for clarification as to the appropriate avenue of response to the church's letter. Engineer Herbertson answered those questions and advised the council that the matter could be placed on a future agenda, with all parties given notice and an opportunity to comment. Therefore, the discussion itself falls within all three statutory exceptions.

11

Finally, plaintiffs contend they will likely prevail on the merits because the city's actions – placing the parking restriction issue on the next agenda – violated the rules and procedures in the 2013 parking regulations, which plaintiffs contend prohibited what was effectively an appeal of the traffic engineer's statement that the regulations provided for no such appeal. (Gov. Code, § 54954.2, subd. (a)(2) [subject to rules of procedures of legislative body, staff can be directed to place a matter on the agenda].)

We see two fundamental problems with this contention. First, as we read the statute, it requires the legislative body to follow its rules or procedures in regard to setting agendas, and does not address whether a matter was wrongly placed on the agenda for other reasons. To hold otherwise would convert the Brown Act into a vehicle for challenging agendized matters because opponents believe the legislative body lacks authority to act for reasons unrelated to the policies behind the open meeting law. If the 2013 parking regulations barred the city from acting, that issue was ripe for discussion by plaintiffs when the matter was heard at the next council meeting.

Second, as we read the record, city staffers concluded the 2013 parking regulations applied to parking zone issues raised by only the residents of an affected area, not by organizations or businesses located in or near the parking zone. It was on that basis that the church's attempt to appeal was administratively rejected, and it was that concern that led the city, acting on advice of its traffic engineer, to conclude it still possessed the authority to reconsider parking restrictions in response to a challenge such as that brought by the church. We have read the 2013 parking regulations, and agree that they are silent on the type of challenge raised here. Under plaintiffs' interpretation, however, the city could never reconsider long-standing parking restrictions no matter how much conditions had changed, so long as the challenge came from someone other than the residents of that zone. We reject that interpretation, and on that basis as well conclude that the plaintiffs are not likely to prevail on the merits.

## DISPOSITION

The order dismissing plaintiffs' action under the anti-SLAPP provisions is affirmed.  Respondents shall recover their costs on appeal.


                                        RUBIN, J.

WE CONCUR:


        BIGELOW, P. J.


        FLIER, J.

13

Filed 8/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL CRUZ et al., | B265690 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC565079) |
| v. | |
| CITY OF CULVER CITY et al., | **ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION** |
| Defendants and Respondents. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on July 15, 2016, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is further ordered, the opinion shall be modified as follows:

On page 9, subheading No. 4 "The Public Interest Exception Does Not Apply" is replaced with: The Public Interest Exception Does Not Defeat the anti-SLAPP Motion.

This modification does not change the judgment.

_____

BIGELOW, P. J.                    RUBIN, J.                    FLIER, J.