Filed 4/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRANSPARENTGOV NOVATO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF NOVATO,<br><br>        Defendant and Respondent. | A152324<br><br>(Marin County<br>Super. Ct. No. CIV-1603895) |

Appellant TransparentGov Novato appeals from an order denying its petition for a writ of mandate and declaratory relief against the City of Novato. It seeks redress for alleged violations of California's open-meeting law (Gov. Code, § 54950 et seq.) (the Brown Act) at a December 2015 meeting of the Novato City Council.[1] Although the parties have extensively briefed the issue whether certain discussions at that meeting violated the Brown Act, we conclude TransparentGov failed to demonstrate a justiciable controversy warranting relief. As a result, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This case arises out of two public-works projects approved by the Novato City Council, a five-member body. The first was a solar-panel carport to be built near a public swimming pool, which was approved in November 2018. The second was a bus-transfer facility, which was approved in August 2015 by a vote of four to one. Then-councilmember Pat Eklund cast the sole vote against the bus project.

---

[1] All subsequent statutory references are to the Government Code unless otherwise noted.

In November 2015, the City's electorate voted two new councilmembers into office. At a meeting on December 8, 2015, the new councilmembers were sworn in, and the Council elected Eklund as mayor. The next City Council meeting, the first business meeting of the month, occurred on December 15. Before the meeting, Mayor Eklund sent an email to some constituents inviting them to attend and voice their opposition to the bus project during the public-comment portion of the meeting.

Most of the December 15 meeting was taken up with public comment. A number of commentators expressed their opposition to the solar project, and others expressed their opposition to or support for the bus project. After the meeting's public-comment portion concluded, Mayor Eklund stated that in the upcoming "[c]ouncil[-]comments" portion of the meeting, she would explain "why the Council should give [the bus project] another look" at a future meeting. Mayor Eklund then asked the city manager to address whether the Council "[could] or should reconsider" the solar project. He responded by stating that "staff does not believe that [the] Council should revisit that topic," but he affirmed that a councilmember could ask for reconsideration. Mayor Eklund then explained that during the upcoming council-comments portion of the meeting, any councilmember could ask that the solar project be placed on a future agenda.

At the time, a provision in the City Council's policy manual allowed councilmembers to request orally during the first business meeting of a month that an item be placed on a future agenda. This policy stated that discussions surrounding any such request "should not take more than three minutes," although the time limitation was construed as a suggested guideline and not as a strict rule if circumstances warranted a longer discussion.

The Council discussed both projects during the council-comments portion of the December 15 meeting. Mayor Eklund first asked that the bus project be placed on a future agenda and explained why such an action was appropriate. She solicited a response from the other councilmembers. A majority stated they were not in favor of placing the item on a future agenda. This exchange lasted about 12 minutes.

2

Mayor Eklund then asked the other councilmembers about placing the solar project on a future agenda. One councilmember asked whether it was practical to reconsider the project given its state of construction. The city manager explained the possible consequences of reconsidering the project and asked the public works director to provide background on the project's status. The discussion lasted about 11 minutes, and no consensus was reached as to whether to place the item on a future agenda. Instead, in an exchange lasting about seven minutes, the Council considered and then voted to form a subcommittee to study the solar project.

On July 29, 2016, TransparentGov sent a letter to the City claiming that the Council had violated the Brown Act at the December 15 meeting by discussing substantive aspects of the solar project and by voting to establish a subcommittee to further consider the project without first giving public notice that these activities might occur. The letter did not mention the City Council's December 15 discussions of the bus project, although the letter did generally demand that the Council "cease, desist from, and not repeat the past actions that violate the Brown Act." The City responded in writing by agreeing that it would not in the future establish council subcommittees at a meeting without first placing the issue of subcommittee formation on the meeting's posted agenda.

The City Council soon implemented an additional remedial measure. At a meeting on October 4, 2016, it formally passed a resolution amending its policy to prohibit councilmembers from orally asking during a meeting for an item to be placed on a future agenda. Instead, the new policy requires councilmembers who want to discuss placing an item on a future agenda to submit a written request six days before the meeting in which the request will be considered.[2] Under the new policy, any such written request must be included in the agenda package for that meeting. Thus, no discussion about

[2] The policy adopted at the October 4 meeting required a request to be submitted seven days in advance, but this period was later reduced to six days.

3

placing an item on a future agenda will occur during a meeting unless the public has been notified in the agenda package that such a discussion might ensue.[3]

A few weeks after the adoption of the new policy, TransparentGov filed this lawsuit.  TransparentGov sought a declaration under Code of Civil Procedure section 1060 (section 1060) that at the December 15 meeting the City violated the Brown Act by "discussing the substantive issues related to the [bus and solar projects] and taking action on the solar panel facility without proper notice or placement on the agenda in violation of [sections 54952.2, subdivision (a)(1) and 54954.2, subdivision (a)(1)]."  It also sought a peremptory writ of mandate under Code of Civil Procedure section 1085 ordering the City to "only discuss[] and/or tak[e] action . . . where the item is publicly noticed and appears on a posted agenda adequately describing subjects to be discussed," as well as attorney fees and costs.

The City moved to strike the petition in its entirety, or alternatively to strike the portion of the petition that sought relief based on the City Council's having formed a subcommittee at the December 15 meeting without advance notice.  The trial court denied the motion.  The parties then filed briefs, supported by extensive declarations and exhibits, on the petition's substantive merits.  After a hearing, the court adopted its tentative ruling denying the petition, and it entered judgment in the City's favor in June 2017.

II.

DISCUSSION

A.    *The Governing Law.*

"The Brown Act requires that most meetings of a local agency's legislative body be open to the public for attendance by all.  (Gov. Code, § 54953, subd. (a).)  Among its

---

[3] Several weeks before oral argument, we sent the parties a letter asking that they focus on the justiciability issue created by the new policy.  Two days before oral argument, TransparentGov submitted a request for judicial notice of the current version of the City Council's policy manual.  The version of the new policy in this document does not differ from the version in our record in any relevant respect, and we deny the request for judicial notice as unnecessary to our decision.

4

provisions, the Brown Act requires that an agenda be posted at least 72 hours before a regular meeting and forbids action on any items not on that agenda. (Gov. Code, § 54954.2, subd. (a)(1).)" (*Cruz v. City of Culver City* (2016) 2 Cal.App.5th 239, 245.) The Brown Act's agenda requirement has three exceptions, which cover (1) brief responses to public questions, (2) brief announcements or requests for clarification, and (3) requests for further actions by staff, subject to the rules or procedures of the legislative body. (*Ibid.*) Where, as here, the relevant facts are undisputed, we independently review the trial court's determination whether the Brown Act was violated. (*Californians Aware v. Joint Labor/Management Benefits Committee* (2011) 200 Cal.App.4th 972, 978.)

Certain procedural requirements apply under the Brown Act when a party seeks relief for past actions of a legislative body. Under section 54960, subdivision (a), an interested person may "commence a lawsuit by mandamus, injunction or declaratory relief to determine the applicability of the Brown Act 'to ongoing actions or threatened future actions of the legislative body, or to determine the applicability of [the Brown Act] to past actions of the legislative body, *subject to Section 54960.2*.' " (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1150 (*Government Accountability*).) Section 54960.2, in turn, "establishes several conditions to filing a lawsuit [based on past actions] under section 54960, subdivision (a), including submission of a cease and desist letter to the offending legislative body." (*Government Accountability*, at p. 1150.)[4] A trial court must dismiss with prejudice any case seeking relief for any past action if the court concludes that the legislative body has responded to the letter "with an unconditional commitment to cease, desist from, and not repeat the [allegedly wrongful] past action." (§ 54960.2, subd. (c)(1) & (3).)

Additional requirements apply depending on the form of relief sought. "To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show there is

---

[4] A party can also seek to have an action of the legislative body in violation of the Brown Act deemed "null and void" under section 54960.1, a provision that is not implicated here.

5

no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present[,] and beneficial right to performance of that duty." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 606 (*County of San Diego*).)  If the evidence, including facts arising after the writ petition is filed, "demonstrates the [respondent's] 'willingness to perform without coercion, the writ [of mandate] may be denied as unnecessary; and if [the respondent] shows actual compliance, the proceeding will be dismissed as moot.' [Citation.]  No purpose would be served in directing the [respondent] to do what has already been done." (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 742.) "Issuance of a writ of mandate ' " 'is not necessarily a matter of right, but lies rather in the discretion of the court.' " ' " (*County of San Diego*, at p. 593.)[5]

To obtain declaratory relief under section 1060, still other considerations apply. (See *Ricasa v. Office of Administrative Hearings* (2018) 31 Cal.App.5th 262, 280.)  "A declaratory relief action requires an actual controversy relating to the legal rights and duties of the respective parties" (*Alliance for California Business v. State Air Resources Bd.* (2018) 23 Cal.App.5th 1050, 1068), not merely " ' "an abstract or academic dispute." ' " (*County of San Diego*, *supra*, 164 Cal.App.4th at p. 606.)  " 'The "actual controversy" language in . . . section 1060 encompasses a *probable future controversy* relating to the legal rights and duties of the parties . . . [that] "is 'ripe' when it has reached, *but has not passed*, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." ' " (*Ibid.*, some italics added.)  In other words, " '[d]eclaratory relief operates prospectively to declare future rights, rather than to

---

[5] Although TransparentGov also sought injunctive relief, it did not request an injunction separate from its prayer for a writ of mandate.  We perceive no basis for analyzing its entitlement to injunctive relief any differently than its entitlement to a writ of mandate.  "Mandamus, rather than mandatory injunction, is the traditional remedy for the failure of a public official to perform a legal duty.  [Citations.]  Thus, the legal principles governing judicial compulsion of official acts have developed under the rubric of mandamus rather than injunction." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [analyzing claim for injunctive relief that "would be identical in purpose and function to a writ of mandate" under mandamus principles].)

redress past wrongs,' " thus " ' "set[ting] controversies at rest before they lead to repudiation of obligations, invasions of rights or commission of wrongs; . . . the remedy is to be used in the interests of preventive justice, to declare rights rather than to execute them." ' " (*Id.* at pp. 607-608.)

As we recently explained in *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923 (*Artus*), reviewing a trial court's denial of declaratory relief involves two prongs. As discussed above, "[t]he first prong concerns whether 'a probable future dispute over legal rights between parties is sufficiently ripe to represent an "actual controversy" within the meaning of [section 1060] as opposed to purely hypothetical concerns.' [Citation.] This is a 'question of law that we review de novo on appeal.' [Citations.] The second prong concerns '[w]hether such [an] actual controversy merits declaratory relief as necessary and proper (Code Civ. Proc., § 1061).' [Citations.] This is a matter within the trial court's sound discretion 'except in the extreme circumstances where relief is "entirely appropriate" such that a trial court would abuse its discretion in denying relief . . . or where relief would never be necessary or proper.' " (*Artus*, at pp. 930-931, italics omitted.)

In combination, these requirements impose on a person seeking a writ of mandate and declaratory relief under the Brown Act for an allegedly illegal past practice of a legislative body the burden to show not only compliance with section 54960.2, subdivision (a)(1) but also the existence of a justiciable controversy, meaning one that is actionable under section 1060 and has not been rendered moot. And even assuming those requirements are satisfied, a reviewing court may reverse a trial court's decision to deny mandamus or declaratory relief only if the decision constituted an abuse of discretion.

B.    *The Trial Court Properly Denied TransparentGov's Petition Based on the Council's Action to Form a Subcommittee.*

TransparentGov argues that the trial court wrongly denied its petition as to the alleged violation involving the City Council's forming of a subcommittee about the solar project. We disagree, because the City provided an "unconditional commitment to cease,

7

desist from, and not repeat the [allegedly wrongful] past action." (§ 54960.2, subd. (c)(1) & (3).)

In its cease-and-desist letter, TransparentGov asserted that the City violated the Brown Act when the Council proceeded to "take Council action by consensus decision to establish a subcommittee to make recommendations to the Council regarding the future of the solar [project]." In its written response, the City "unconditionally" committed to "cease, desist from, and not repeat taking action by consensus decision to establish subcommittees of the City Council without first placing the formation of subcommittees on the posted agenda." In our view, this is precisely the type of "unconditional commitment" under section 54960.2 that protects the legislative body from litigation under the Brown Act.

TransparentGov argues that the City's commitment was inadequate because TransparentGov's cease-and-desist letter "was not limited to subcommittees, nor to consensus decisions—the Demand was meant to limit all future discussions and action on items not listed on the agenda." But whether TransparentGov can pursue *other* relief because the cease-and-desist letter allegedly had larger objectives does not affect whether it is entitled to relief based on the aspect of its claim involving the establishment of subcommittees by consensus. The portion of the cease-and-desist letter seeking to stop the City Council from establishing subcommittees without first putting the issue on the agenda *did* address this specific claim, and the City responded by unconditionally committing to stop the practice. As a result, the trial court properly rejected TransparentGov's claim "of violation regarding the vote to create a Council subcommittee."

C.      *No Justiciable Controversy Exists Regarding the Council's December 15 Discussions of the Solar and Bus Projects.*

The cease-and-desist letter also asserted that the City Council violated the Brown Act at its December 15 meeting by discussing substantive aspects of the solar project, and it demanded that the Council "cease, desist from, and not repeat the past actions that violate the Brown Act." As we have mentioned, the petition sought a declaration that the

8

Council violated the Brown Act by "discussing the substantive issues related to [both the bus and solar projects] . . . without proper notice or placement on the agenda in violation of [sections 54952.2, subdivision (a)(1) and 54954.2, subdivision (a)(1)]." It also sought a writ of mandate to compel the City to "only discuss[] and/or tak[e] action . . . where the item is publicly noticed and appears on a posted agenda adequately describing subjects to be discussed." The City argues that "the case is moot" since "the only violations alleged took place . . . years ago, and the Council has adopted rule changes that provide for agendizing requests to put items on a future agenda." We agree with the City that there is no justiciable controversy entitling TransparentGov to mandamus or declaratory relief.

In arguing that the action is not moot, TransparentGov first claims that "a unilateral rule change does not comply with an agency's . . . [required] response to a cease-and-desist demand under § 54960.2." This argument misses the point. The jurisdictional requirement of an actual, non-moot controversy in the context of a request for mandamus or declaratory relief exists separate and apart from the procedural requirements of section 54960.2. True enough, section 54960.2 requires a court to dismiss a claim involving a past action when the public entity makes an unconditional commitment to refrain from repeating the action. But that does not mean that a court must entertain every other claim about a past action even when the circumstances demonstrate that there is no ongoing dispute about it.

TransparentGov next argues that its position is supported by cases describing policy changes that have been found not to moot pending Brown Act litigation, but we are not persuaded. It primarily relies on *Government Accountability*, in which a challenge was brought under the Brown Act to a city council's "adherence to a long-standing ordinance providing for only one nonagenda public comment period over the course of its two-day regular weekly meetings." (*Government Accountability*, *supra*, 247 Cal.App.4th at p. 1150.) While the case was pending, the city adopted an ordinance "providing for a nonagenda public comment period on each day of its two-day regular weekly meetings." (*Id*. at p. 1151.) The trial court sustained the city's demurrer without leave to amend, but the Court of Appeal reversed. (*Id*. at p. 1157.) In concluding that

9

there remained a case or controversy notwithstanding the new ordinance, the Court of Appeal explained that the plaintiff "may be able to at least plead a viable claim for declaratory relief," even though the city's new policy "may moot this action if [it is shown that] there is no reasonable expectation the [c]ity will adopt another ordinance resuming its former practice." (*Id.* at pp. 1151, 1157.)

Unlike the appellate court in *Government Accountability*, we are not reviewing a trial court's ruling on a demurrer but are instead reviewing a decision on the merits. Our record includes extensive evidence, which was mostly uncontested, providing factual details and context about the alleged Brown Act violations and the City Council's amended policy manual. Furthermore, the new policy in *Government Accountability* was adopted after litigation was initiated (*Government Accountability*, *supra*, 247 Cal.App.4th at p. 1157), while the Council here adopted the new policy *before* TransparentGov filed the petition, which is less suggestive of any likelihood the Council will return to its prior practice.

Moreover, in *Government Accountability* the city's position on remediation was equivocal. There, the city's counsel "acknowledged the change in the [c]ity's practice . . . did not equate to a change in the [c]ity's legal position," the city still considered " 'its two-day regular weekly meeting to be one continuous meeting, rather than two separate meetings, for Brown Act purposes,' " and the city did not "concede[] its former practice . . . violated the Brown Act." (*Government Accountability*, *supra*, 247 Cal.App.4th at p. 1157.) Here, in contrast, the Council's new policy is unequivocal and ensures that discussions about placing an item on a future agenda will not occur without advance notice. This categorically rules out future disputes about the applicability of the Brown Act's exceptions to any such discussion. (Cf. *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 913 [injunctive relief not moot when "issues remain as to the degree of compliance" with the legislative body's new policy].) When there is no reasonable basis to believe that a past action will be repeated, a viable claim does not exist simply because a public entity declines to concede that the action was illegal under the Brown Act.

10

Nor do the other cases that TransparentGov cites advance its cause. In *United States v. W.T. Grant Co.* (1953) 345 U.S. 629, the Supreme Court recognized the general principle that "voluntary cessation of allegedly illegal conduct . . . does not make the case moot," but with the caveat that a "case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' " (*Id.* at pp. 632-633.) And in *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, the Court of Appeal concluded that a party could not seek declaratory relief involving a city council's resolution "merely [giving] notice to the public of potential legislation that might be adopted in the future" because what type of legislation might be passed was speculative. (*Id.* at p. 541.) Here, in contrast, the City Council adopted a specific policy that by its terms ensures the complained-of activity will not occur. The abstract possibility that the policy "can be repealed at any time in the future" does not suffice to create a justiciable controversy.

Although not cited by TransparentGov, *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024 (*California Alliance*) is also distinguishable. In *California Alliance*, the plaintiff alleged "four continuing violations of the Brown Act." (*Id.* at p. 1028.) The plaintiff alleged that, in violation of the Act, the city "adopted a practice" of holding closed meetings on the pretext of pending litigation, failing to give notice of or reasons for the closed sessions, holding improper discussions during closed sessions, and posting misleading agendas. (*Ibid.*) The city successfully demurred on the ground any claims for future violations were not ripe. (*Ibid.*) The Court of Appeal reversed, pointing out that the plaintiff alleged that the city would continue its allegedly unlawful conduct and observing that the city's insistence it had not violated the Brown Act suggested a continuing controversy. (*Id.* at p. 1030.) The court remarked that "the allegations of the complaint also strongly suggest that in the absence of declaratory relief plaintiffs will have some difficulty in preventing future violations." (*Id.* at p. 1031.)

As we pointed out in *Artus*, because *California Alliance* was a review of a demurrer, the appellate court was required to credit the citizen group's allegations that the

11

city would continue to violate the Brown Act, and these allegations were reinforced by the city's insistence that it was not violating the Act and would continue its practices. (*Artus*, *supra*, 19 Cal.App.5th at pp. 933-934.)  But here, as we have discussed, we are not reviewing a ruling on a demurrer, our record includes extensive and largely undisputed evidence, the amended policy was adopted before this suit was filed, and the new policy negates the prospect that discussions will take place about placing an item on a future agenda without advance notice.  Simply stated, there is no basis to conclude that in the absence of mandamus or declaratory relief the City Council will continue to have non-noticed discussions about placing an item on a future agenda.

As a result, resolving whether the discussions that took place at the December 15 meeting violated the Brown Act is unnecessary to guide any future behavior that is realistically likely to occur.  Courts should not be "saddled with the task of resolving historic disputes that have become matters of only academic interest" or compelling parties to avoid repeating problems they have already fixed.  (*Artus*, *supra*, 19 Cal.App.5th at p. 934; see *State Bd. of Education v. Honig*, *supra*, 13 Cal.App.4th at p. 742.)  TransparentGov has not demonstrated a justiciable controversy warranting mandamus or declaratory relief, and the trial court therefore properly denied its petition.

III.
DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Sanchez, J.

*TransparentGov v. City of Novato* (A152324)

13

Trial Court:

      Marin County Superior Court


Trial Judge:

      Hon. Stephen P. Freccero


Counsel for Defendant and Respondent:

      Jeffrey A Walter; Law Offices of Walter & Pistole


Counsel for Plaintiff and Appellant:

      Edward E. Yates; Law Office of Edward E. Yates

*TransparentGov v. City of Novato* (A152324)