[No. S143087. Dec. 15, 2008.]

CLUB MEMBERS FOR AN HONEST ELECTION, Plaintiff and Appellant,
v.
SIERRA CLUB et al., Defendants and Appellants.

310

COUNSEL

Law Offices of Ian B. Kelley, Ian B. Kelley, Conrad Wu; Law Office of Jeff D. Hoffman and Jeff D. Hoffman for Plaintiff and Appellant.

Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox and Susan E. Seager for Defendants and Appellants.

Law Offices of James Wheaton and James R. Wheaton for Senator Sheila Kuehl as Amicus Curiae on behalf of Defendants and Appellants.

OPINION

**CORRIGAN, J.**—Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP statute,[2] provides that a civil cause of action may be dismissed as a strategic lawsuit against public participation (SLAPP). Section 425.17, subdivision (b) (section 425.17(b)) provides an exception to the anti-SLAPP statute by exempting some actions from dismissal. Here, we hold the exception applies only when the entire action is brought in the public interest. If any part of the complaint seeks relief to directly benefit the plaintiff, by securing relief greater than or different from that sought on behalf of the general public, the section 425.17(b) exception does not apply.

Accordingly, we reverse a contrary judgment by the Court of Appeal. However, we affirm that part of the judgment holding that the trial court properly struck parts of the complaint under the anti-SLAPP statute because its order established that plaintiffs did not show a probability of prevailing.

---

[1] Statutory references are to the Code of Civil Procedure.

[2] Section 425.16, subdivision (b)(1) provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

## FACTS AND PROCEDURAL BACKGROUND[3]

The Sierra Club (Club), the nation's largest environmental organization, is governed by a 15-member board of directors (Board), who are elected for three-year staggered terms. The Club holds elections for five directors each year. A nominating committee chooses a slate of candidates, but other candidates may be nominated by member petition.

While total Club membership exceeds 700,000, member participation in annual elections is generally low.[4] As a result, the vote of a small number of members may disproportionately influence the outcome. In 2003, there was a rift among the Board members. A majority favored current policies, while a minority sought to take the Club in a different direction. Ballots for the 2004 election were to be mailed in February. On January 30, 2004, in response to a perceived threat posed by candidates favoring the minority view, the Board held a meeting and took the actions that led to this litigation.

First, the Board voted to disseminate an article to all chapter newsletters. Written by Drusha Mayhue, it cautioned that low member participation in elections made the Club vulnerable to takeover efforts by those whose agenda differed from that of the majority.

Second, the Board also directed that an "urgent election notice" be attached to the front of voting materials. The notice warned of "an unprecedented level of outside involvement and attention" to the Club's election and named a number of outside groups that "may be attempting to intervene" in the election. Though the notice itself did not refer to specific candidates, ballot materials included statements of three candidates who disclaimed any personal interest in being elected. Instead, those three candidates' statements urged members to vote for the Club's nominating committee slate or against candidates supported by outside groups.[5]

Plaintiff and candidate Robert van de Hoek, and a group supporting him, Club Members for an Honest Election (CMHE), objected to the Club's distribution of this material and sought injunctive relief. As amended, the complaint alleged that the Club had distributed information supporting some

---

[3] These background facts have been taken largely from the Court of Appeal opinion.

[4] Between 1999 and 2003, the percentage of members participating in the vote ranged from 8.7 percent to 10.1 percent.

[5] The ballot materials also included a one-page general discussion on the election, a list of candidates, and 10 pages of candidates' statements about the election.

candidates and opposing others. It also alleged that candidates opposed by the Club were not given an opportunity to present contrasting views and challenged the inclusion of statements by "three fake Board candidates." The Club defeated plaintiffs' requests for temporary and preliminary restraining orders. Using the anti-SLAPP statute, it successfully urged the court to strike a portion of the complaint seeking to enjoin or censor future speech. Plaintiffs did not appeal the order to strike. The election went forward; van de Hoek was not among those elected to the Board.

Several months after the election, van de Hoek and CMHE filed a second amended complaint against the Club and added six individual directors as defendants. The complaint alleged four causes of action: (1) a challenge to the validity of the election under Corporations Code section 5617; (2) a petition for declaratory relief; (3) breach of fiduciary duty; and (4) violation of Business and Professions Code section 17200. The third cause of action was aimed, in part, at directors Nick Aumen and Jan O'Connell, who ran successfully on the nominating committee slate. It alleged that they breached their fiduciary duty by voting for the Board actions taken at the January 30, 2004 meeting. The complaint sought extensive injunctive relief, including the removal of five elected or appointed Board members and the installation of van de Hoek and four other unsuccessful candidates. It sought both to bar those removed directors from running for the Board in the 2005 election and to bar Aumen and O'Connell from ever running for the Board again.

Again relying on the anti-SLAPP statute, the Club moved to strike the second amended complaint. The parties also filed competing motions for summary judgment. With regard to the anti-SLAPP motion, the court held that voting as a director is protected under the First Amendment to the United States Constitution (First Amendment). Thus, it struck the third cause of action alleging that the votes of Aumen and O'Connell breached a fiduciary duty. It also struck a paragraph of the first cause of action that referred to the votes of the directors. The balance of the motion to strike was denied. The court went on to deny plaintiffs' motion for summary judgment and to grant that of the defendants. The complaint was then dismissed in its entirety. In connection with the Club's partially successful anti-SLAPP motions, the court awarded fees and costs in the amount of $37,010.76.

Plaintiff van de Hoek did not appeal. CMHE did not challenge the summary judgment rulings, but did appeal the anti-SLAPP rulings and related fee and cost awards. The Club cross-appealed from the partial denial of the motion to strike, arguing that the entire complaint arose from defendants' protected activities.

The Court of Appeal held that plaintiffs' breach of fiduciary duty cause of action arose from protected First Amendment activity, and was thus subject to the Club's motion to strike.

The Court of Appeal also held that certain causes of action fell under section 425.17(b), the public interest exception to the anti-SLAPP statute, and that those particular causes of action should not have been struck. The Court of Appeal concluded that the first, second and fourth causes of action were exempt from the anti-SLAPP statute under the public interest exception. Because CMHE challenged the Club's election procedures on the ground that they constituted an unfair manipulation of an election to defeat candidates advancing views at odds with those of the existing board of directors, the Court of Appeal held that the "principal thrust or gravamen" of these causes of action was consistent with a public interest action. The Court of Appeal relied in large measure on case law interpreting section 1021.5, the private attorney general statute, which awards attorney fees to a party whose action has resulted in the enforcement of an important right affecting the public interest. By analogy, the Court of Appeal concluded that, even when a plaintiff has a personal stake in a case, the litigation could still involve an important legal issue of public interest, the resolution of which could benefit the public as a whole and transcend the plaintiff's personal interest. In applying the "principal thrust or gravamen" test, the Court of Appeal erred.

## DISCUSSION

### *The statutory scheme*

█ In 1992, the Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186 [6 Cal.Rptr.3d 494].) The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should "be construed broadly." (§ 425.16, subd. (a); see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Such a motion requires a two-step process. First, the defendant must make a prima facie showing that the "cause[s] of action . . . aris[e] from" the defendant's actions "in furtherance of the [defendant's] right of . . . free speech . . . in connection with a public issue." (§ 425.16,

subd. (b)(1).) If a defendant meets this threshold showing, the plaintiff must establish "a probability that the plaintiff will prevail on the claim[s]." (*Ibid.*)

In 2003, the Legislature enacted section 425.17 to curb the "disturbing abuse" of the anti-SLAPP statute. (§ 425.17, subd. (a).) This exception statute covers both public interest lawsuits, under subdivision (b), and "commercial speech," under subdivision (c). This case involves only the application of subdivision (b), which provides: "Section 425.16 does not apply to any action brought *solely* in the public interest or on behalf of the general public if *all* of the following conditions exist: [¶] (1) The plaintiff does not seek *any* relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (Italics added.) If a complaint satisfies the provisions of the applicable exception, it may not be attacked under the anti-SLAPP statute.

■ By incorporating the "principal thrust or gravamen" test, the Court of Appeal's analysis failed to adhere to the plain meaning of section 425.17(b). "In construing any statute, we first look to its language. [Citation.] 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] 'If the language permits more than one reasonable interpretation, however, the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' [Citation.]" (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379 [46 Cal.Rptr.3d 380, 138 P.3d 713].) In addition, because section 425.17(b) is a statutory exception to section 425.16, it should be narrowly construed. (*City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 400 [39 Cal.Rptr.3d 1] (*Ballard*).)

■ Section 425.17(b)'s exception applies only to actions brought "solely in the public interest or on behalf of the general public." Use of the term

"solely" expressly conveys the Legislative intent that section 425.17(b) not apply to an action that seeks a more narrow advantage for a particular plaintiff. Such an action would not be brought "solely" in the public's interest. The statutory language of 425.17(b) is unambiguous and bars a litigant seeking "any" personal relief from relying on the section 425.17(b) exception.[6]

*Section 425.17(b) is not applicable because plaintiffs' suit did not seek relief solely in the public interest or on behalf of the general public*

The Court of Appeal correctly observed that there was "no doubt" that portions of the prayer for relief sought a personal advantage[7] by advancing plaintiffs' own interests. Under the Court of Appeal's own analysis, CMHE sought "relief greater than or different from the relief sought for the general public." (§ 425.17(b)(1).) For example, it asked the court to order the Club to install van de Hoek and four other unsuccessful candidates on the Board; publish, at its own expense, "an article by Plaintiffs of equal length to that of the Mayhue editorial"; and disseminate an "Urgent Election Notice" written by plaintiffs along with ballots for the 2005 election. CMHE asked the court to order the Club to "place an introduction written by Plaintiffs in the ballot for the 2005 Board election that is equal in length to the introduction in the 2004 ballot that extolled the virtues of the [Club's] Nominating Committee Candidates." It also sought to bar directors Aumen, Karpf, O'Connell, Ranchod, and Restrom from running in the Club's 2005 election. The Court of Appeal concluded that such orders would have assisted the candidacy of van de Hock and other CMHE-sponsored candidates. The Court of Appeal acknowledged that "portions of the prayer . . . were calculated to give plaintiffs and their allies an advantage in intra-club politics" and there was "no doubt" that plaintiffs sought a "personal advantage" in the Club's elections.

*The Court of Appeal unduly relied on sections 425.16 and 1021.5*

■ Notwithstanding its observations, the Court of Appeal gave the phrase "public interest" in section 425.17(b) the same expansive meaning as it has in

---

[6] Accordingly, we reject CMHE's argument that insertion of the word "or" in section 425.17(b) ("[Anti-SLAPP statute is not applicable to] any action brought solely in the public interest *or* on behalf of the general public" (italics added)) means that section 425.17 protects suits brought on behalf of the general public even if the suit is not exclusively in the public interest. It makes little sense for the Legislature to provide that an action brought "in the public interest" must be brought solely for that purpose, while an action brought "on behalf of the general public" would allow a plaintiff to seek personal relief. Such an interpretation would render the first phrase useless because a plaintiff would simply invoke the second phrase, as CMHE attempts to do so in this case.

[7] The use of the term "personal advantage" includes an individual or particular advantage sought by a group, such as CMHE.

section 425.16, the anti-SLAPP statute. Under section 425.16, a defendant may move for dismissal under the anti-SLAPP statute if the defendant's underlying speech activities are "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *id.*, subd. (e)(3).) The Legislature has also directed that section 425.16 "shall be construed broadly" given that the anti-SLAPP statute protects speech about important public issues. (§ 425.16, subd. (a).)

■   The "public interest" referred to in section 425.17(b), does not simply describe topics that members of the public might find interesting. Instead the term "public interest" is used to define suits brought for the public's good or on behalf of the public. To qualify under section 425.17(b)'s exception, suits must be brought *solely* to secure this public benefit.

In reaching its contrary conclusion the Court of Appeal relied on case law involving section 1021.5, the private attorney general statute. Section 1021.5 awards attorney fees to a party whose action has resulted in the enforcement of an important right affecting the public interest.[8] The Court of Appeal referred to section 1021.5 because the Legislature, when drafting section 425.17(b), stated that it was borrowing from section 1021.5 and noted that the two statutes were similar. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.) pp. 11–12.) Analogizing to section 1021.5, the Court of Appeal concluded that when a plaintiff has a personal stake in the litigation, such as having his or her statement included in the voters' pamphlet, the litigation could still include an important legal issue of public interest that transcends the plaintiff's personal stake and would benefit the public interest as a whole.

While section 425.17 is similar to section 1021.5 in certain respects, the two statutes are also different in significant ways. First, unlike the private attorney general statute, the text of section 425.17(b) requires that an action be brought "solely in the public interest," and cannot seek "any" relief greater than or different from the relief sought for the general public. (§ 425.17(b)(1).) Section 1021.5 does not contain these limitations.

---

[8] Section 1021.5 provides, in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The two statutes also involve different functions. Section 1021.5 is an attorney fees statute. It authorizes a trial court at the *end* of litigation to determine whether attorney fees should be awarded to a prevailing party. Section 425.17(b) comes into play at the *outset* of litigation and pertains to a special motion to strike. The viability of the underlying action itself is at issue in an anti-SLAPP motion and in the public interest exception to the anti-SLAPP statute. Attorney fees are separately available to a prevailing party in such instances under the anti-SLAPP statute. (§ 425.16, subd. (c).) Because of these functional differences, section 425.17(b) cannot simply be intended to parallel the private attorney general statute.

■   The plain language of section 425.17(b) is dispositive here. The Court of Appeal erred in reaching beyond it to interpret the language in a contrary fashion. Even if the statute's language were ambiguous, reliance on the private attorney general fee statute and cases is flawed because of the disparities noted above.

*Application of the "principal thrust or gravamen" test was error*

■   The Court of Appeal's application of the "principal thrust or grava-men" test also fails because it contravenes the statutes' plain meaning and confuses the broad interpretation called for under section 425.16 with the narrow reading required for the section 425.17(b) exception. The "principal thrust or gravamen" test has been used to determine whether an action fits within the scope of the anti-SLAPP protection provided by section 425.16 when a pleading contains allegations referring to both protected and unpro-tected activity. (See, e.g., *Martinez v. Metabolife Internat., Inc., supra*, 113 Cal.App.4th at p. 188.) The Court of Appeal incorrectly concluded that the same approach should govern here.

The "principal thrust or gravamen" test serves the legislative intent that section 425.16 be broadly interpreted. Thus, a plaintiff could not deprive a defendant of anti-SLAPP protection by bringing a complaint based upon both protected and unprotected conduct. The anti-SLAPP statute specifically per-mits the striking of a "cause of action." The exception provided for in section 425.17 operates in the opposite manner. As an exception, it is to be narrowly interpreted (*Ballard, supra*, 136 Cal.App.4th at p. 400), lest it swallow the rule found in the anti-SLAPP statute. The Legislature also made this general rule of construction explicit in the language it chose. It requires that, under section 425.17(b) an *action*, as opposed to a cause of action, must be brought

*solely* in the public interest. The Court of Appeal's analysis of section 425.17(b) renders the term "solely" as surplusage, a result cautioned against by the rules of statutory construction. (*People v. Cole* (2006) 38 Cal.4th 964, 980–981 [44 Cal.Rptr.3d 261, 135 P.3d 669].)

An examination of section 425.17, subdivision (c), dealing with commercial speech, reveals that the choice of words was intentional. Subdivision (c) provides for the exemption of a "cause of action," rather than an "action" as a whole, as required under subdivision (b). The Legislature clearly distinguished between an "action" and a "cause of action" in drafting subdivisions (b) and (c) of section 425.17, and treated them differently. (See also § 425.17, subds. (d)(2), (e).) It expressly provided that the public interest exception only applies if the entire action is brought solely in the public interest. If individualized relief is sought, a plaintiff must satisfy the requirements of the anti-SLAPP statute in order for the action to proceed. (*Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050, 1067 [28 Cal.Rptr.3d 933]; cf. *Northern Cal. Carpenters Regional Council v. Warmington Hercules Associates* (2004) 124 Cal.App.4th 296, 300 [20 Cal.Rptr.3d 918].)

### Other issues

Because of our holding we need not address the Club's contention that its "urgent election notice" constituted a political work under section 425.17, subdivision (d)(2).[9] We note also that this argument was not advanced in the trial court, nor was it addressed by the Court of Appeal. Because we hold that section 425.17(b) applies to actions as a whole, we also do not address the Club's contention that the fiduciary duty claim did not fall under the public interest exception.

We also reject CMHE's contention that it met its burden under the second prong of the anti-SLAPP statute by showing a probability of success on its breach of fiduciary duty claim. In separate orders, the trial court partially granted the Club's motion to strike. It also granted the Club's motion for summary judgment and dismissed CMHE's complaint. CMHE did not appeal the order of dismissal. The Court of Appeal held that the trial court's dismissal after the grant of summary judgment "actually adjudicated this issue by ordering dismissal of the second amended complaint." Because CMHE failed to challenge the order of dismissal, the Court of Appeal concluded that CMHE could not challenge the propriety of this determination. We agree.

---

[9] Section 425.17, subdivision (d)(2) excepts from the "public interest" exemption of section 425.17(b)(2), "[a]ny action against any person or entity based upon the creation, dissemination . . . or other similar promotion of any . . . political . . . work."

## DISPOSITION

The Court of Appeal's judgment is reversed. The matter is remanded to the Court of Appeal with directions to affirm the trial court's order insofar as it granted the anti-SLAPP motion, to reverse the trial court's order insofar as it denied that motion, and to remand the matter to the trial court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.