Filed 10/11/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN POWELL, JR., et al.,<br><br>    Defendants and Appellants. | E079078<br><br>(Super.Ct.No. RIC1905897) |
| HOWARD JARVIS TAXPAYERS ASSOCIATION,<br><br>    Plaintiff, Respondent and Cross-appellant,<br><br>v.<br><br>JOHN POWELL, JR., et al.,<br><br>    Defendants, Appellants and Cross-respondents. | E079712<br><br>(Super.Ct.No. RIC1905897)<br><br>OPINION |

APPEAL and CROSS-APPEAL from the Superior Court of Riverside County.

Sunshine S. Sykes and Craig G. Riemer, Judges.  Reversed; cross-appeal affirmed.

Greines, Martin, Stein & Richland, Robin Meadow, Rachel A. Beyda; Colantuono,

Highsmith & Whatley, Michael G. Colantuono, Pamela K. Graham and Liliane M.

Wyckoff for Defendants and Appellants and for Defendants, Appellants and Cross-respondents.

Costell & Adelson Law Corporation, Jeffrey Lee Costell, John M. Haytol; Frost, Joshua S. Stambaugh and Sara McDuffie for Plaintiff and Respondent and for Plaintiff, Respondent and Cross-appellant.

This appeal is from one of several cases between Howard Jarvis Taxpayers Association (Howard Jarvis) and the Coachella Valley Water District (Water District). Here, we consider whether the public interest exemption to the anti-SLAPP statute applied, as the trial court found. We hold that the exemption did not apply, as there was no justifiable reason for Howard Jarvis to sue the Water District's board members or general manager individually for remedies only the Water District can provide. We also hold that the anti-SLAPP motion should have been granted, except as to one cause of action.

Our holding on the anti-SLAPP motion determines one of the two other issues before us. Following the denial of the anti-SLAPP motion, the plaintiff moved for fees on the ground that the anti-SLAPP motion was frivolous or solely intended to cause delay. The trial court agreed and awarded over $180,000 against the anti-SLAPP defendants and their counsel. Our reversal on the anti-SLAPP motion means the fee award must be reversed. As to a cross-appeal on a later order sustaining a general demurrer, our reversal on the anti-SLAPP motion means that almost all the cross-appeal

is moot. We hold that the demurrer was properly sustained on the lone cause of action not mooted by the anti-SLAPP.

## I. BACKGROUND

Howard Jarvis and the Water District have litigated repeatedly. Some of the cases originated as lawsuits filed by Randall Roberts where Howard Jarvis later substituted in as the plaintiff. Howard Jarvis initiated others. We recently decided two appeals between these parties. In one, we held that the validation statutes (Code Civ. Proc., §§ 860-870) applied to the Water District's ad valorem property tax. (*Coachella Valley Water District v. Superior Court of Riverside County* (2021) 61 Cal.App.5th 755 (*Coachella I*).) In the other, we held that the Water District's interfund loan did not violate Propositions 26 and 218. (*Howard Jarvis Taxpayers Association v. Coachella Valley Water District* (Feb. 10, 2023, E078411) [nonpub. opn.] (*Coachella II*).) In other active appeals before us, we will consider whether the Water District's canal rates and groundwater assessment charge violate Propositions 26 and 218.[1] But this appeal involves pretrial orders in the groundwater assessment charge case against the Water District, and although the several other defendants in the case are parties to this appeal, the Water District is not.

The Water District is a public agency responsible for supplying water to the Coachella Valley. Its main source of potable water is the groundwater in the Coachella

---

[1] On our own motion, we take judicial notice of the appellate record in *Coachella I*, *Coachella II*, and the active appeals between the parties before us. (Evid. Code, §§ 452, subd. (d), 459.)

Valley aquifer.  For decades, the aquifer's groundwater levels declined from overdraft, so the Water District now manages the aquifer by spreading or injecting water from other sources into the aquifer.  This process is partially funded by replenishment assessment charges (replenishment charges), which Water Code section 31630 gives the Water District the authority to impose.  (See also Wat. Code, § 31630.5, subd. (g) ["Replenishment" also includes "incentive programs encouraging producers to use reclaimed water . . . instead of groundwater"].)  The Water District divides its service area into three areas of benefit:  the East Whitewater River Subbasin area, the West Whitewater River Subbasin area, and the Mission Creek Subbasin area.  Each area is subject to its own replenishment charge.  (Wat. Code, § 31633; see also *Coachella II*, *supra*, E078411  [describing Water District's groundwater management].)

In November 2019, Roberts filed a combined petition and putative class action complaint against the Water District; three of its five board members (John Powell Jr., Peter Nelson, and Anthony Bianco); its general manager (James Barrett); and three consulting firms (MWH Global Inc., Hawksley Consulting, Inc., and Stantec Consulting, Inc.).  It alleged that the replenishment charges unconstitutionally violate Propositions 26 and 218, and that the defendants have "perpetually forc[ed] property taxpayers, domestic ratepayers, and those paying [replenishment charges] in the West to subsidize the interests of large agricultural property owners in the East Coachella Valley, including Board members Powell, Nelson and Bianco."  According to the pleading, in 2017, the replenishment charge for the East Whitewater River Basin area was $66 per acre-foot,

4

whereas the replenishment charges for the West Whitewater River Subbasin area and Mission Creek Subbasin area were $143.80 per acre-foot and $135.53 per acre-foot, respectively. The pleading alleges that, as a result of the low replenishment charge for the East Whitewater River Basin area, "Big Ag businesses in the East (including those owned by . . . Powell, Nelson and Bianco) enjoy artificially 'cheap' groundwater and, in turn, reap incredible profits." The low replenishment charge for that area was justified by the consultants' cost-of-service study, "which deliberately fabricated a fictional basis for the discriminatory" rates.

The petition and complaint alleged nine causes of action: (1) writ of mandate (against the Water District, the three board members, and the general manager); (2) violation of the California Constitution (against the Water District); (3) violation of the United States Constitution (against the Water District); (4) violation of the Water Code (against the Water District); (5) conversion (against the Water District, the three board members, and the general manager); (6) aiding and abetting tortious conduct and statutory violations (against the consultants); (7) civil conspiracy to commit tortious conduct and statutory violations (against all defendants); (8) violation of the Unfair Competition Law (UCL, Bus. & Prof. Code, § 17200 et seq.) (against the consultants); and (9) declaratory relief (against all defendants).

All the defendants demurred on all causes of action, and all defendants except the Water District filed an anti-SLAPP motion under Code of Civil Procedure section 425.16

(section 425.16).[2]  Before those motions could be decided, Roberts filed a first amended petition and complaint, which contained the same causes of action against the same defendants.  Again, all defendants demurred, and all defendants except the Water District filed an anti-SLAPP motion.[3]  The demurrer before us was not the one filed on the first amended petition and complaint, but the anti-SLAPP before us was.  The demurrer before us, we explain below, was filed as to a third amended petition and complaint.

## A.  The Anti-SLAPP Motion

The anti-SLAPP defendants—all defendants except the Water District—moved to strike the writ of mandate, conversion, aiding and abetting, civil conspiracy, UCL, and declaratory relief causes of action against them on the grounds that those claims arose from their protected activity.  The motion focused on three activities alleged.  The first was the board members' vote to set the replenishment charges.  The second was the general manager's discussion of the cost-of-service study with board members.  And the third was the consultants' preparation of a cost-of-service study that the board relied on in setting the replenishment charges.  The motion also claimed the causes of action based on these activities failed on the merits:  not only were the board members and general manager immune from suit under the Government Tort Claims Act (Gov. Code, § 810 et

---

[2]  "SLAPP is an acronym for 'strategic lawsuit against public participation.'"  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[3]  Amending a complaint normally does not prevent a then-pending anti-SLAPP motion to be heard (*Dickinson v Cosby* (2017) 17 Cal.App.5th 655, 679), but the anti-SLAPP motion was refiled under a general order by the Riverside County Superior Court for the COVID-19 pandemic.  (General Order No. 2020-15, Apr. 22, 2020.)

seq.), but the preparation of the cost-of-service study was also privileged under Civil Code section 47, subdivision (b).

Roberts' opposition claimed his lawsuit was exempt from the anti-SLAPP statute under the public interest exemption, contained in Code of Civil Procedure section 425.17 (section 425.17), subdivision (b), which we analyze below. The trial court agreed with Roberts that the exemption applied and denied the motion. Because the denial relied on the exemption, the anti-SLAPP defendants could not immediately appeal the ruling. (§ 425.17, subd. (e).) The anti-SLAPP defendants sought a writ of mandate to overturn the ruling, which we summarily denied.

*B. The Demurrer*

On the same day the trial court denied the anti-SLAPP motion, it also sustained the defendants' demurrer as to all causes of action on the first amended petition and complaint. The demurrer as to the conversion, aiding and abetting, and civil conspiracy causes of action were sustained without leave to amend, while Roberts was given leave to amend the remaining causes of action.

A second amended petition and complaint alleged five causes of action: (1) writ of mandate (against the Water District, the three board members, and the general manager); (2) violation of the California Constitution (against the Water District); (3) violation of the United States Constitution (against the Water District); (4) violation of the UCL (against the consultants); and (5) declaratory relief (against all defendants).

The cause of action for violating the Water Code was eliminated, although the demurrer as to that cause of action had been sustained with leave to amend.

The defendants again demurred to all causes of action. They argued, as earlier, that the replenishment charges were subject to the validation statutes, so, because Roberts did not timely sue in validation, the suit was time-barred as to any replenishment charge adopted more than 60 days before filing of the original petition and complaint. (See Code Civ. Proc., § 863.) The defendants raised other grounds, but the trial court agreed the suit was time-barred and sustained the entire demurrer on that ground. The trial court stated orally that timeliness under the validation statutes was the reason the demurrer was sustained earlier, and without any new facts showing the suit to be timely, this time the entire demurrer was sustained without leave to amend.

No judgment was entered when the demurrer was sustained without leave to amend in December 2020. This was because in August 2020, Roberts had filed a validation action challenging the replenishment charges the Water District approved for the 2021 fiscal year, and that ongoing case (the 2021 Reverse Validation Action) had been consolidated with this one. The trial court declined to sever the cases to enter judgment in this case.

Several months later, Howard Jarvis substituted in as lead plaintiff for Roberts. The trial court allowed a third amended petition and complaint to be filed in this case, per the parties' stipulation, solely to substitute Howard Jarvis for Roberts as the putative lead plaintiff. Plaintiff's counsel remained the same. The parties also stipulated that the

8

demurrer to the second amended petition and complaint would be treated as the demurrer to the third amended petition and complaint and deemed sustained without leave to amend as explained in the trial court's earlier ruling.

### C.  The Anti-SLAPP Fees Motion

Howard Jarvis moved for fees incurred in opposing the anti-SLAPP motion.  It claimed the anti-SLAPP motion was frivolous or solely intended to cause unnecessary delay, thus warranting an award against the anti-SLAPP defendants.  (See Code Civ. Proc., § 425.16 (§ 425.16), subd. (c)(1).)  The trial court agreed, awarding $177,774.30 in attorneys' fees and $2,992.20 in costs jointly and severally against the anti-SLAPP defendants and their counsel.

### D.  The Appeal

The fee award was immediately appealable because it was for more than $5,000 (see Code Civ. Proc., § 904.1, subd. (a)(12)), and the anti-SLAPP defendants and their counsel appealed.  The award's propriety could depend on the anti-SLAPP motion's merit, because a meritorious motion is not frivolous or solely intended to cause unnecessary delay.  However, the anti-SLAPP ruling was appealable only from judgment, which had not been entered because the 2021 Reverse Validation Action (and validation actions challenging replenishment charges for later fiscal years that had since been filed and consolidated) had not been resolved.  So a few months after the fee ruling, the anti-SLAPP defendants moved again for an order severing this case.

9

During those few months between the fees ruling and the severance motion, however, Judge Sykes, assigned to the consolidated cases, had left the court, and the cases had been reassigned to Judge Riemer. In August 2022, apparently at Judge Riemer's suggestion, Howard Jarvis dismissed the anti-SLAPP defendants, so Judge Riemer denied the severance motion. Both sides then appealed the judgment of dismissal, with the anti-SLAPP defendants challenging the anti-SLAPP motion and Howard Jarvis challenging the demurrer ruling. We consolidated those appeals with the one pending on the anti-SLAPP fees motion.

## II. DISCUSSION

We will begin with the anti-SLAPP motion and the motion granting attorney fees. We hold that the trial court erred in finding that the public interest exemption protected the first amended petition and complaint from an anti-SLAPP challenge. We then find that, with two exceptions, the anti-SLAPP defendants satisfactorily demonstrated that the causes of action alleged against them arose from protected activity, and that Howard Jarvis has failed to demonstrate that those causes of action have minimal merit. As a result, the anti-SLAPP motion should have been granted in large part, and the fees award was in error. Turning then to the demurrer, we find that because the causes of action alleged against the anti-SLAPP defendants in the third amended petition and complaint should have, with one exception, been dismissed as part of the anti-SLAPP motion, the cross-appeal on the demurrer is largely moot. As to the sole cause of action still at issue, however, we hold that the demurrer was properly sustained.

10

*A. The Anti-SLAPP Motion*

*1. The Public Interest Exemption*

In 1992, the Legislature enacted section 425.16, the anti-SLAPP statute, to allow for early dismissal of unmeritorious claims filed "to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 (*Club Members*).) The Legislature authorized the filing of a special motion to strike such claims, and it provided that section 425.16 should "'be construed broadly.'" (*Club Members*, *supra*, at p. 315.)

"In 2003, the Legislature enacted section 425.17 to curb the 'disturbing abuse' of the anti-SLAPP statute." (*Club Members*, *supra*, 45 Cal.4th at p. 316, citing Code Civ. Proc., § 425.17, subd. (a).) Section 425.17 contains two exemptions, one for public interest lawsuits (§ 425.17, subd. (b)) and the other for commercial speech (§ 425.17, subd. (c)). Satisfying an exemption means the complaint "may not be attacked under the anti-SLAPP statute." (*Club Members*, *supra*, at p. 316.)

An action may qualify for the public interest exemption if three requirements are met. The first is that the plaintiff may not "seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member," disregarding attorneys' fees, costs, and penalties for this purpose. (§ 425.17, subd. (b)(1).) The second is that "[t]he action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or

11

nonpecuniary, on the general public or a large class of persons." (§ 425.17, subd. (b)(2).) And the third is that "[p]rivate enforcement [must be] necessary and place[] a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b)(3).)

Additionally, to qualify for the public interest exemption, the "*action*, as opposed to a cause of action, must be brought *solely* in the public interest." (*Club Members*, *supra*, 45 Cal.4th at pp. 319-320; § 425.17, subd. (b).) If any portion of the lawsuit contravenes section 425.17, subdivision (b), then the public interest exemption does not apply at all.[4] We address de novo whether an action falls under the public interest exemption before considering whether section 425.16 applies. (*Save Westwood Village v. Luskin* (2014) 233 Cal.App.4th 135, 143.)

The public interest exemption does not apply here, as the public interest is not advanced when individual members of an official government body are sued for relief only the government body can provide. Our focus is on the writ of mandate and conversion causes of action. The plaintiff seeks a writ of mandate to direct the defendants to stop collecting unlawful replenishment charges, vacate all resolutions unlawfully imposing replenishment charges, and return all amounts collected as unlawful

---

[4] By contrast, the commercial speech exemption can apply to some causes of action in a lawsuit but not others. (§ 425.17, subd. (c); see *Club Members*, *supra*, 45 Cal.4th at p. 320 ["The Legislature clearly distinguished between an 'action' and a 'cause of action' in drafting subdivisions (b) and (c) of section 425.17, and treated them differently"].)

12

replenishment charges. The conversion cause of action seeks a return of the same amounts. But all these are acts only the Water District can perform, not any individual board members or its general manager.[5] The first amended petition and complaint seeks to stop collection of unlawful replenishment charges, but replenishment charge payments are made to the Water District, not to the general manager. (Wat. Code, § 31635 ["Any replenishment assessment levied pursuant to this chapter shall be due and payable to the district . . . ."].) It asks for the resolutions about the replenishment charges to be vacated, but only the Water District's board can do that, not individual board members. (Wat. Code, § 30525 ["No ordinance, resolution, or motion shall be passed or become effective without the affirmative votes of at least a majority of the members of the board"].) And it prays for a return of the money paid as replenishment charges, but that money is in the Water District's bank accounts, not the general manager's. There is a "distinction between action taken by a government body and the expressive conduct of individual representatives." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 425 (*Montebello*); see *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 599 [noting "distinction between, on the one hand, claims seeking to impose liability against a governmental entity, and, on the other, claims seeking to impose liability for the expressive activity of officials through whom a government entity must act"].)

---

[5] The plaintiff also seeks a writ of mandate to require the Water District, board members, and general manager to "comply with the mandatory duties under the California Constitution . . . and other applicable laws," but a writ of mandate will not issue to grant the same relief already provided by other laws. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 596.)

13

The inclusion of the board members and the general manager as defendants in these causes of action is gratuitous. Its only effect is to expose those individuals to the potential costs of having to provide for their own defense as well as the threat of personal liability. (Gov. Code, §§ 995, 995.2, 825, 825.6.) That risk, even if small, is enough to have a chilling effect. "Just as SLAPPs filed against individuals have a 'chilling' effect on their participation in government decision making, SLAPPs filed against public officials, who often serve for little or no compensation, may likely have a similarly 'chilling' effect on their willingness to participate in governmental processes." (Sills, *SLAPPS: How Can the Legal System Eliminate Their Appeal?* (1993) 25 Conn. L.Rev. 547, 550 cited in *Montebello*, *supra*, 1 Cal.5th at p. 426.)

Had the writ of mandate and conversion causes of action been against only the Water Board, the exemption would have applied. The anti-SLAPP defendants do not dispute that the requirements in section 425.17, subdivisions (b)(1) and (b)(2) were met. As to subdivision (b)(3)—"Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter"—the anti-SLAPP defendants correctly claim that it was not "necessary" for them to be sued. Nevertheless, subdivision (b)(3) was met here, as it is satisfied when no public entity has enforced the right that the plaintiff seeks to vindicate. (See, e.g., *The Inland Oversight Committee v. County of San Bernardino* (2015) 239 Cal.App.4th 671, 676; *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1464; *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 504; cf.

*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217 [construing private attorney general statute; "only the availability of public enforcement" "affect[s] the necessity of private enforcement"], italics removed.) But along with the requirements listed in subdivisions (b)(1), (b)(2), and (b)(3), the public interest exemption requires that the entire action be brought solely in the public interest. (§ 425.17; *Club Members*, *supra*, 45 Cal.4th at pp. 319-320.) As the writ of mandate and conversion causes of action are pled beyond the Water Board itself, the action is not brought solely in the public interest.

Arguing otherwise, Howard Jarvis states the lawsuit "seeks to rectify critical issues concerning governmental abuses of power, conflicts of interest, public fraud, manipulation of water rates, constitutional violations, and environmental concerns about large agricultural companies depleting the Coachella Valley's supply of potable drinking water." There is no serious dispute that other causes of action alleged in the first amended petition and complaint seek to promote the public interest on these issues. But claims asserted against individual defendants for actions only the government body undertook do not advance the public interest. If we ignored the lack of public benefit in suing the individual defendants on the writ of mandate cause of action, we would be applying a "principal thrust or gravamen" test to determine whether the exemption applies, an approach our Supreme Court has rejected. (*Club Members*, *supra*, 45 Cal.4th at pp. 319-320 [Court of Appeal "incorrectly concluded" that "principal thrust or gravamen" test governs under § 425.17, subd. (b)].) The trial court accordingly erred when it found that the action fell under the public interest exemption.

Howard Jarvis contends that, should we decide the public interest exemption does not apply, we should remand the matter to the trial court to decide the anti-SLAPP motion in the first instance. Remand, however, makes little sense under the circumstances. In the four years since the anti-SLAPP motion was first filed, the case has progressed to trial and appellate review, so the case is nowhere near the early stage of litigation that anti-SLAPP motions were designed for. Furthermore, "[w]hether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) Further still, the anti-SLAPP defendants inform us that Judge Riemer has since left the bench, so upon remand a third judge would need to become familiarized with these cases to rule on the anti-SLAPP motion, causing additional delay. Rather than remanding, we address whether the motion should have been granted below.

### 2. Step One: Protected Activity

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) The speech or petitioning activity itself must be "the wrong complained of." (*Id.* at p. 1060.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, at p. 394.)

16

"The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Section 425.16 identifies four categories of protected activity, two of which matter here. Section 425.16, subdivision (e)(1) protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

The anti-SLAPP motion adequately identifies two protected activities that gave rise to alleged liability. First, the board members' vote to set the replenishment charges fell under section 425.16, subdivision (e)(1) (*Montebello*, *supra*, 1 Cal.5th at p. 422), and it formed the basis for several causes of action, including the writ of mandate cause of action against them and the declaratory relief cause of action against all the anti-SLAPP defendants. Those two causes of action allege harm from the enactment of the replenishment charges, which directly resulted from the board members' vote. The board members' vote also forms the basis for the civil conspiracy cause of action against all the anti-SLAPP defendants and the aiding and abetting cause of action against the consultants. For those claims, the voting was the target act—the wrongful act and goal of the conspiracy that the consultants aided and abetted. (See *Spencer v. Mowat* (2020) 46

17

Cal.App.5th 1024, 1037 ["When liability is asserted for the target act of a conspiracy, [any] preliminary speech or petitioning activity is simply evidence of the defendant's liability, not 'the wrong complained of'"].)

The second protected activity was the consultants' preparation of their cost-of-service study, which constituted a writing falling under section 425.16, subdivision (e)(2). Because it was, according to the allegations of the first amended petition and complaint, a fraudulent business act that the UCL proscribes, the preparation of the cost-of-service study formed the basis for the UCL violation cause of action against the consultants.

Not all causes of action alleged against the anti-SLAPP defendants arose from protected activity. The anti-SLAPP defendants have not identified a protected activity underlying the conversion cause of action. The first amended petition and complaint bases this cause of action on only the "taking [of] certain monies (in an amount ascertainable from [the Water District's] records) through unlawful" replenishment charges. Nothing suggests that such an action falls under any category of protected activity in section 425.16, subdivision (e).

As well, not all of the protected activities the anti-SLAPP defendants identify formed the basis for any cause of action against them. The general manager's discussion of the cost-of-service study with the board members qualifies as a "written or oral statement or writing made in connection with an issue under consideration" (§ 425.16, subd. (e)(2)), but the writ of mandate cause of action against the general manager is not

18

based on those discussions. Rather, it is based on the general manager's collection and enforcement of the replenishment charges, although it is the Water District that formally undertakes those actions, not the general manager as an individual.

### 3. Step Two: Probability of Success on the Merits

If a defendant makes its required showing in the first step, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384.) In evaluating the second step, the court "accepts the plaintiff's evidence as true" and "evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at p. 385.) To establish a probability of prevailing on the claim, a plaintiff "'must "'state[] and substantiate[] a legally sufficient claim.'"" [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714; see *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [analysis is "summary-judgment-like"].)

Howard Jarvis has not shown a probability of success on any of the implicated causes of action. Those causes of action, to reiterate, are (1) the writ of mandate against the Water District's board members (but not the general manager); (2) civil conspiracy against all the anti-SLAPP defendants; (3) aiding and abetting against the consultants;

19

(4) the UCL violation against the consultants; and (5) declaratory relief against all the anti-SLAPP defendants.

First, the writ of mandate cause of action fails as a matter of law because, as discussed above, no such writ relief would properly extend to the board members. (See also *Montebello*, *supra*, 1 Cal.5th at p. 426 ["It is not necessary to sue government officers in their personal capacities to challenge the propriety of a government action"].)

Second, the civil conspiracy cause of action fails for varied reasons. It fails against the board members because "California's Government Claims Act [(Gov. Code, § 810 et seq.)] confers immunity from tort liability on public employees when they make 'basic policy decisions' in a legislative capacity." (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1337, citing Gov. Code, §§ 820.2, 821, 821.2; see *Pacific Tel. & Tel. Co. v. Public Utilities Commission* (1965) 62 Cal.2d 634, 647 ["The fixing of rates is a legislative act"].) In contrast, the general manager is not immune under the Government Claims Act. (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981 ["no basis" under Government Claims Act "for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated"]). But the cause of action fails against him, too, because the evidence offered does not meet Howard Jarvis's burden. The opposition to the anti-SLAPP showed only that Barrett stated that farmers in the East Coachella Valley believed they were entitled to cheap water, that he doubted there would be much support to raise water rates there just to accommodate a sense of parity, and that the replenishment charge in the East Whitewater River Subbasin area

20

would rise to over $500 an acre-foot in five or six years if true replenishment costs for that area were taken into account. None of these statements could reasonably be interpreted to show he "'"'acted in concert [with other conspirators] and came to a mutual understanding to accomplish a common and unlawful plan"'"'" (*Spencer v. Mowat*, *supra*, 46 Cal.App.5th at p. 1036).

The civil conspiracy cause of action fails as to the consultants because Civil Code section 47, subdivision (b) provides absolute immunity for publications and statements made in an "official proceeding authorized by law." (See, e.g., *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 727 [privilege applies to preparation of environmental impact report], disapproved on another ground in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10; *Frisk v. Merrihew* (1974) 42 Cal.App.3d 319, 324 [privilege may apply to statements made in school board meetings].) The privilege extends to those made before the proceeding "if they have some logical connection to the suit and are made to achieve the objects of" the proceeding. (*Cayley v. Nunn* (1987) 190 Cal.App.3d 300, 303-304.) The cost-of-service study was prepared for the board meeting that set the replenishment charges, so it cannot form the basis of tort liability, even derivatively. Although Howard Jarvis contends the privilege cannot apply because the consultants never intended to provide truthful and accurate information, "[m]otives, morals, ethics and intent are not elements of the privilege." (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara*, *supra*, 65 Cal.App.4th at p. 727.)

21

Third, the aiding and abetting and UCL violation causes of action against the consultants fail for the same reason articulated immediately above, which is that Civil Code section 47, subdivision (b) makes the consultants "absolutely immune from tort liability" (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193) for preparing the cost-of-service study.

And finally, the declaratory relief cause of action fails against the anti-SLAPP defendants because it seeks only a declaration that the replenishment charges are unlawful.  The anti-SLAPP defendants' rights and duties are not implicated by such a declaration.  (Code Civ. Proc., § 1060.)

In sum, the anti-SLAPP motion should have been granted except as to the conversion cause of action and the writ of mandate against the general manager.  The trial court's award of fees against the anti-SLAPP defendants and their counsel for filing a frivolous anti-SLAPP motion was therefore in error because the motion was largely meritorious, rather than "'totally and completely without merit.'"  (*Area 51 Productions, Inc. v. City of Alameda*, *supra*, 20 Cal.App.5th at p. 606.)

### B.  Demurrer

The third amended petition and complaint alleged causes of action mainly against the Water District, which is not one of the parties Howard Jarvis dismissed.[6]  As against

_____

[6] The combined appellants' reply brief and cross-respondents' brief lists the Water District as a cross-respondent.  But the Water District is not a party to the cross-appeal, as the judgment forming the basis of the cross-appeal dismissed the anti-SLAPP defendants but not the Water District.  (See *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880 ["when there is a several judgment resolving all issues

the anti-SLAPP defendants, the third amended petition and complaint alleged a writ of mandate cause of action against the board members and general manager, a UCL violation cause of action against the consultants, and a declaratory relief cause of action against the anti-SLAPP defendants. However, as discussed above, and with one exception, each of these should have been dismissed as part of the anti-SLAPP motion. Whether or not the trial court properly sustained the demurrer on the third amended petition and complaint is therefore largely a moot question. "A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" [Citation.] A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'"" (*In re D.P.* (2023) 14 Cal.5th 266, 276.) There can be no effective relief here, as even if we were to agree with Howard Jarvis that the demurrer was sustained in error, the causes of action alleged against the anti-SLAPP defendants would, with one exception, still be dismissed.[7]

The sole exception is the writ of mandate cause of action against the general manager, which we determined above did not arise from the general manager's protected

between a plaintiff and one defendant, either party may appeal from an adverse judgment, although the action remains pending between the plaintiff and other defendants"], citing Code Civ. Proc., § 579.)

[7] Howard Jarvis's request for judicial notice, made in connection with the arguments it raises on cross-appeal, is denied as moot.

activity.  Yet the demurrer was properly sustained as to this narrow portion.  Just as we stated above that no relief sought by the proposed writ would properly extend to cover the individual board members, so too would such relief not properly extend to the general manager.  That cause of action therefore fails as to the general manager as a matter of law.[8]

---

[8]  Howard Jarvis has forfeited any argument concerning the order sustaining the demurrer to the first amended petition and complaint without leave to amend as to the conversion, aiding and abetting, and civil conspiracy causes of action.  Its statement that the causes of action against the anti-SLAPP defendants "for their ongoing conspiracy should still stand" lacks any supporting argument.  "'"'When an appellant [asserts a point] but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].'"  [Citation.]  "We are not bound to develop appellants' arguments for them."'"  (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521.)

## III.  DISPOSITION

The order denying the anti-SLAPP motion and the order awarding attorney's fees and costs on the anti-SLAPP motion are reversed.  The order sustaining the demurrer on the second amended petition and complaint (which was deemed the basis for sustaining the demurrer to the third amended petition and complaint) is affirmed.  The anti-SLAPP defendants are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.